**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| LCI HOLDING COMPANY, INC., | ) | Case No. 12-13319 (KG) |
| Debtors. | ) | (Jointly Administered) |

**MEMORANDUM IN SUPPORT OF THE**
**MOTION OF THE UNITED STATES FOR STAY**

This Court approved the sale of substantially all of debtors' assets under the auspices of 11 U.S.C. § 363 and not as part of a confirmed Chapter 11 plan ("Sale Approval Order"). (See Docket No. 617.) The United States objected to the sale because: (1) debtors sought the benefits of bankruptcy protection, including among other things the ability to preclude the United States from pursuing collection of the tax from the transferee, without the possibility of ever confirming a valid plan; (2) debtors will recognize a taxable gain upon the sale resulting in an administrative claim for a substantial tax liability, for which no provision has been made, and the sale will leave insufficient assets in the estate to pay the administrative claim; and (3) as a part of the transaction, the transferee will make direct payments to some, but not all, administrative claimants, purportedly outside the bankruptcy process, including payments to counsel for debtors, and proposes to make direct payments to unsecured creditors in violation of the absolute priority rules of the Bankruptcy Code. (Docket No.

496 at 1-2.)[1] The United States appealed. (See Docket No. 660)

The United States is harmed by the Sale Approval Order since its administrative claim will not be paid on par with all other administrative claims. If a contemplated settlement between the transferee and the unsecured creditors committee is approved, the United States will also be harmed because unsecured creditors will be paid ahead of the United States in violation of the absolute priority rule. The United States is further harmed by the Sale Approval Order because the terms of the order prevent the United States from pursuing the transferee of the assets for the unpaid taxes that were not dealt with as required in a Chapter 11 plan.

The United States now moves for a stay of the Sale Approval Order while the appeal is pending to protect its ability to be paid on its administrative claim as required in a Chapter 11 plan and to otherwise pursue collection of the unpaid taxes from the transferee.[2] Absent a stay, the United States may be irreparably harmed in its ability to seek relief from the harms described above. The Court should stay the Sale Approval Order to the extent that it purports to bar the United States from collecting any unpaid taxes resulting from the sale. The Court should also stay the disbursement of any funds

---

[1] The steering committee and unsecured creditors committee have reached an agreement to settle the unsecured creditors' potential objection to the sale, whereby the steering committee will give the unsecured creditors $3.5 million in exchange for support of the sale. (See Proposed Sale Approval Order, Ex. E (Docket 583-1).) That settlement has not yet been approved by this Court.

[2] The United States does not seek to delay transfer of management of debtors' health facilities or otherwise endanger the well-being patients. For example, the Court can permit the transfer but to hold in escrow all funds, including those which the transferee intends to transfer "outside" of bankruptcy.

to any claimant, including those contemplated in the asset purchase agreement and the proposed settlement between the transferee and the unsecured creditors committee.

**ARGUMENT**

This Court may stay the Sale Approval Order pursuant to Federal Rule of Bankruptcy Procedure 8005 to the extent necessary in order to minimize harm to the United States. To demonstrate that a stay pending appeal is justified, the moving party must establish: (1) a strong showing of likelihood of success on the merits; (2) irreparable harm absent a stay; (3) that issuance of the stay will not substantially injure the other parties to the proceeding; and (4) that a stay is in the public interest. Republic of Philippines v. Westinghouse Elec. Corp., 249 F.2d 653, 658 (3d Cir. 1991). "[E]qual weight for each factor is not required since the formula cannot be reduced to a set of rigid rules." Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp., 397 F. Supp. 2d 537, 547 (D. Del. 2005) (internal quotations omitted). Rather, "courts should use a flexible balancing approach." Tristrata Tech. Inc. v. ICN Pharms., Inc., No. 01-150, 2004 U.S. Dist. LEXIS 6557, at *6 (D. Del. Apr. 12, 2004).

This Court likely disagrees with the United States' position on the relative merits of its appeal given the Sale Approval Order and the fact that it "would be a rare judge who makes a ruling he or she thinks is 'likely' to be reversed on appeal." Hoekstra v. Oak Cluster Cmty. Counsel, 268 B.R. 904, 906 (Bankr. E.D. Va. 2000). Nevertheless, a stay should be granted because the United States' appeal presents issues of "substantial equity, and need for judicial protection, whether or not movant has shown a

mathematical probability of success." WMATA v. Holdiay Tours, Inc., 559 F.2d 841, 844 (D.C. Cir. 1977) (discussing inductions pending appeal under Federal Rule of Civil Procedure 62(c)).

**I. The United States is Likely to Prevail on the Merits.**

The Bankruptcy Code does not permit the use of section 363 for the benefit of a single or select group of creditors and to the detriment of other creditors. The sale must be given "close factual scrutiny" because "the proportionate value of the assets being sold is high." In re General Motors Corp., 407 B.R. 463, 492 n. 54 (Bankr. S.D.N.Y. 2009); see also In re Savage Industries, Inc., 43 F. 3d 714, 720 n.9 (1st Cir. 1994); Mission Iowa Wind Co. v. Enron Corp., 291 B.R. 39, 43 (S.D.N.Y. 2003). "When permitted, the sale must comply with the Bankruptcy Code . . . ." In re President Casinos, Inc., 314 B.R. 784, 785 (Bkrtcy. E.D. Mo. 2004). Here, the Sale Approval Order allows debtors to sell substantially all of their assets under the auspices of 11 U.S.C. § 363, and not as part of a confirmed Chapter 11 plan or in a manner that would satisfy the requirements of Chapter 11 or Chapter 7, because it prefers some creditors in the same class as the United States at the expense of the United States. See In re Gen. Motors Corp., 407 B.R. at 491 ("the debtor cannot enter into a transaction that would amount to . . . an attempt to circumvent the chapter 11 requirements for confirmation of a plan of reorganization") (internal quotation marks omitted)). In addition, the Court has improperly approved the transferee's agreement to make payments "outside" the Bankruptcy to some, but not all, creditors. See In re Gulf Coast Oil Corp., 404 B.R. 407, 427-28 (Bankr. S.D. Tex. 2009)

(denying approval of section 363 sale because, *inter alia*, administrative expenses would remain unpaid). The United States, therefore, is likely to prevail on appeal. See In re Columbia Gas Sys., No. 92-127, 1992 U.S. Dist. LEXIS 3253, at *4 (D. Del. March 10, 1992) (stating that likelihood of success on the merits means that a movant has a substantial case on appeal).

The Court could not have confirmed a Chapter 11 plan that contained the terms of this sale, especially because certain creditors are unequally preferred over the United States. *First*, the terms of the Sale Approval Order and the "outside" payments do not satisfy the requirements of 11 U.S.C. § 1123. A plan must group similar claims into a class, such as administrative claims, and then "provide the same treatment for each claim or interest of a particular class . . . ." 11 U.S.C. §§ 1123(a)(1), (4). Failure to treat similar claims within a particular class equitably precludes confirmation of a plan. See In re New Century TRS Holdings, Inc., 407 B.R. 576, 592 (D. Del. 2009) ("if claims within the same class are not receiving the same treatment, and the holders of those claims being treated less favorably have not consented to the discrimination, the plan is not confirmable"). Debtors acknowledge that they are choosing to pay certain administrative expense claims (*i.e.*, the professional fees of Debtors' counsel and counsel for the unsecured creditors, as well as certain wind-down expenses) and are not paying other administrative claims including the tax liability that results from the sale.

*Second*, the terms of the Sale Approval Order purport to impair the United States' rights with respect to the transferred property and the transferee in violation of

11 U.S.C. § 1129(a)(7). Under that provision, a plan may only be confirmed if, with respect to each class of impaired claims, "each holder of a claim or interest of such class" who has not accepted the plan "will receive or retain under the plan on account of such claim or interest property of a value . . . that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title." Id.; see, e.g., In re W.R. Grace & Co., 475 B.R. 34, 142 (D. Del. 2012). Under 11 U.S.C. § 1124, a class of claims is impaired "unless, with respect to each claim or interest of such class, the plan – (1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest." The Sale Approval Order impairs the United States' legal and equitable rights to its administrative claim, because the order purports to bar the United States from seeking payment of the taxes resulting from the sale.[3] In addition, were it not for the order, which purports to enjoin further collection, the United States could potentially assert legal and equitable remedies to collect the unpaid taxes from the assets and/or the transferee. See, e.g., 26 U.S.C. § 6901 (transferee liability). Yet, the United States will not receive any portion of its claim, much less what it would be entitled to receive if this were a Chapter 7 bankruptcy (*i.e.*, a pro-rata share of its administrative expense claim).

---

[3] At least one court has suggested that "There is no provision for issuing injunctions in § 363. Injunctions may be available in the context of a § 363 sale, but must be obtained by commencing an adversary proceeding. Fed. R. Bankr. P. 7001(7). They may be available as part of a chapter 11 plan. See Bankruptcy Code § 524(g)." On-Site Sourcing, Inc., 412 B.R. 817, 825 n. 6 (Bkrtcy. E.D. Va. 2009).

Debtors and the Transferee chose to structure this transfer as a sale. A sale transaction carries with it various tax burdens and benefits to each party. Generally, given an arms length transaction, courts will respect the division of tax burdens and benefits between the parties, so long as the United States is not prejudiced. See, e.g., Comm'r v. Danielson, 378 F.2d 771, 775 (3d Cir. 1967) ("And to allow the Commissioner alone to pierce formal arrangements does not involve any disparity of treatment because taxpayers have it within their own control to choose in the first place whatever arrangements they care to make."); United States v. Bergbauer, 602 F.3d 569, 577 (4th Cir. 2010). In this case, Debtors and the Transferee attempt to eliminate some of the tax burdens, while retaining all the benefits, through the Sale Approval Order. For example, by structuring the transfer as a sale, the transferee takes the property at a tax basis equivalent to the sale price of $355 million, rather than at debtors' basis, which they have represented to be substantially less. If the transferee were to later sell the property, any tax liability would be calculated using the stepped-up basis of $355 million. See 26 U.S.C. §§ 1001, 1012. If the transfer had not been structured as a sale, and instead was merely an abandonment, the United States would not have any administrative claim, but the transferee would have a lower basis and a commensurate larger tax liability upon a later sale. It is therefore the structure of the transaction chosen by the debtors and the transferee, and approved by this Court, that gives rise to an administrative claim for taxes, and it is the terms of the Sale Approval Order that

impair the claim created by the order.[4]

*Third*, the proposed settlement between the steering committee and unsecured creditors committee, which was apparently agreed upon so that the unsecured creditors committee would not object to the sale, places the unsecured creditors in a better position than administrative claimants such as the United States, in violation of 11 U.S.C. § 1123(a) (which requires that like claims be treated the same, as discussed above) and in violation of 11 U.S.C. § 1129(a)(7) (which requires that holders of impaired claims (unless they otherwise consent) receive at least what they would receive in a Chapter 7 liquidation, discussed above). A payment to unsecured creditors on account of the sale, regardless of the form or label placed upon it, is property of the estate under section 541, subject to administration by the court under the statutory requirements of the Bankruptcy Code. See In re On-Site, 412 B.R. at 825-28. While the United States will receive no amount of its administrative expense claim, unsecured creditors will receive $3.5 million under the terms of the settlement.

The Sale Approval Order, incorporating the Asset Purchase Agreement, alone and in conjunction with the proposed settlement with the unsecured creditors, "effectively predetermines, in significant part, the structure of an as yet to be drafted

---

[4] For the same reason, the Court's finding (without the benefit of briefing by any party) that the United States' claim was not yet ripe, is incorrect. The claim ripened at the moment the Court approved the Sale Approval Order. By providing for a transfer via sale, rather than abandonment, the tax liability is created. By not providing for payment of the tax as part of the Sale Approval Order and also purporting to bar the United States from using its legal and equitable remedies to collect the tax, the United States' claim arose and ripened upon approval.

plan of reorganization and effectively evades the 'carefully crafted scheme' of the chapter 11 plan confirmation process." Id. at 826 (quotation omitted).

**II. The United States Will Suffer Irreparable Harm Absent a Stay.**

The United States' objection to sale, if sustained on appeal, would result in the pro-rata distribution of the escrow accounts described in the asset purchase agreement, as well as any amount paid by the steering committee to the unsecured creditors, amongst all administrative expenses claimants, including the United States. If a stay is not granted and these amounts are distributed, the debtors, transferee, and unsecured creditors committee could argue that the distribution should equitably moot the appeal. Although the United States would disagree with this position, it is nonetheless well aware that an equitable mootness argument can be fatal by mooting the appeal before the issues are even heard.

Under the equitable mootness doctrine, an appeal should "be dismissed as moot when, even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable." In re Continental Airlines, Inc., 91 F.3d 553, 558-59 (3d Cir. 1996) (internal quotation omitted). The fact that the decision on a stay may be dispositive of the appeal is a factor that the court must consider in determining whether irreparable harm will result from the denial of the stay. See Republic of Philippines, 249 F.2d at 658; Fox Sports Net West 2, LLC v. Los Angeles Dodgers, LLC (In re Los Angeles Dodgers, LLC), 465 B.R. 18, 36-37 (D. Del. 2011) (acknowledging that any risk of equitable mootness supports a finding of irreparable harm). Here, a stay is needed to

prevent disbursement of the challenged amounts, because seeking disgorgement after the fact (especially with regard to the wind-down escrow) could be potentially so complicated as to be inequitable, thereby causing irreparable harm to the United States.

**III. No Party Will Incur Substantial Injury Under A Stay.**

Neither the debtors, steering committee, nor unsecured creditors committee will face substantial injury if the Court enters the stay. "The general rule is that distribution should not occur except pursuant to a confirmed plan of reorganization, absent extraordinary circumstances." In re Conroe Forge & Mfg. Corp., 82 B.R. 781, 784 (Bkrtcy. W.D. Pa. 1988) citing Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143 (3d Cir. 1986). The United States is seeking, through its stay motion, to prevent disbursement of the escrow accounts described in the asset purchase agreement and the proposed settlement between the steering committee and unsecured creditors committee during the pendency of its appeal. If the United States does not prevail on its appeal, these payments will still be made. The inconvenience caused by delayed payment does not constitute substantial injury.

**IV. The Public Interest Will Be Served By A Stay.**

The public has a strong interest in this case because the terms of the Sale Approval Order fundamentally controvert the language and purpose of the Bankruptcy Code. Through its appeal, the United States seeks to uphold the fundamental principles of the Bankruptcy Code, that similar claims are paid in the same way, and that claims are paid in the order directed by the Bankruptcy Code. Additionally, the

public interest is served if the United States has the opportunity to appeal according to the Bankruptcy Code and Rules. Its ability to challenge the Sale Approval Order should not be cut short by virtue of implementation of the very order it is challenging. Therefore, the public interest will be served by a stay.

**CONCLUSION**

For the reasons stated above, the United States requests the Court stay the Sale Approval Order to the extent necessary to continue to stay disbursement of the escrowed funds, and, if the proposed settlement with the unsecured creditors is approved, to add those settlement funds to the escrow.

DATE: April 22, 2013

Respectfully submitted,

CHARLES M. OBERLY
United States Attorney

KATHRYN KENEALLY
Assistant United States Attorney

/s/ Christopher J. Williamson
CHRISTOPHER J. WILLIAMSON
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 227
Washington, DC 20044
Telephone: (202) 307-2250
Facsimile: (202) 514-6866
Christopher.J.Williamson@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on this day, April 22, 2013, I electronically filed the foregoing Memorandum in Support of the Motion of the United States for Stay with the Clerk of the Court using the CM/ECF system.

/s/ Christopher J. Williamson
CHRISTOPHER J. WILLIAMSON
Trial Attorney, Tax Division
United States Department of Justice
P.O. Box 227
Washington, DC 20044
Tel: (202) 307-2250
Fax: (202) 514-6866
christopher.j.williamson@usdoj.gov