# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|                                      |     |                           |
|--------------------------------------|-----|---------------------------|
| In re:                               | )   |                           |
|                                      | )   |                           |
| LCI HOLDING COMPANY, INC.,           | )   | Case No. 1:13-cv-00924-SLR |
|                                      | )   |                           |
|    Debtors.           | )   |                           |

## MEMORANDUM IN SUPPORT OF THE UNITED STATES' MOTION FOR STAY

CHARLES M. OBERLY
United States Attorney

ELLEN W. SLIGHTS
Assistant United States Attorney

KATHRYN KENEALLY
Assistant United States Attorney

CHRISTOPHER J. WILLIAMSON
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 227
Washington, DC 20044
Telephone: (202) 307-2250
Facsimile: (202) 514-6866
Christopher.J.Williamson@usdoj.gov

10164811.2

## TABLE OF CONTENTS

Page(s)

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................... ii

INTRODUCTION ........................................................................................................1

CASE BACKGROUND ................................................................................................3

ARGUMENT...............................................................................................................7

    I.    THE UNITED STATES IS LIKELY TO PREVAIL ON THE MERITS. ...............................8

        A.    The Sale Approval Order Improperly Benefits Some Creditors To The Detriment Of Other Creditors Of The Same Class And It Precludes Confirmation Of A Plan That Complies With Chapter 11 ...............................................................................8

        B.    The Settlement Approval Order Violates The Absolute Priority Rule by Paying Junior Unsecured Creditors Before the Administrative Claim of the United States .........................................13

    II.    THE UNITED STATES WILL SUFFER IRREPARABLE HARM ABSENT A STAY..........18

    III.    NO PARTY WILL INCUR SUBSTANTIAL INJURY UNDER A STAY .........................19

    IV.    THE PUBLIC INTEREST WILL BE SERVED BY A STAY ...........................................19

CONCLUSION ...........................................................................................................20

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143 (3d Cir. 1986).....................................19

Comm'r v. Danielson, 378 F.2d 771 (3d Cir. 1967) ............................................................12

Fox Sports Net West 2, LLC v. Los Angeles Dodgers, LLC (In re Los Angeles

    Dodgers, LLC), 465 B.R. 18 (D. Del. 2011) ....................................................................18

Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp., 397 F. Supp. 2d 537

    (D. Del. 2005)......................................................................................................................7

In re Armstrong World Indus., Inc., 432 F.3d 507 (3d Cir. 2005) ................................. 14-16

In re Columbia Gas Sys., No. 92-127-SLR, 1992 U.S. Dist. LEXIS 3253

    (D. Del. Mar. 10, 1992) ......................................................................................................7

In re Conroe Forge & Mfg. Corp., 82 B.R. 781 (Bankr. W.D. Pa. 1988)..............................19

In re Continental Airlines, Inc., 91 F.3d 553 (3d Cir. 1996)..................................................18

In re General Motors Corp., 407 B.R. 463 (Bankr. S.D.N.Y. 2009) ........................................8

In re Genesis Health, 266 B.R. 591 (Bankr. D. Del. 2001) ....................................................15

In re Gulf Coast Oil Corp., 404 B.R. 407 (Bankr. S.D. Tex. 2009)..........................................9

In re Iridium Operating LLC, 478 F.3d 452 (2d Cir. 2007)....................................................14

In re Louise's, Inc., 211 B.R. 798 (D. Del. 1997) ..................................................................13

In re MCorp Fin., 160 B.R. 941 (S.D. Tex. 1993) ..................................................................15

In re New Century TRS Holdings, Inc., 407 B.R. 576 (D. Del. 2009)....................................10

In re On-Site Sourcing, Inc., 412 B.R. 817 (Bankr. E.D. Va. 2009) ..........................8,11,17

In re President Casinos, Inc., 314 B.R. 784 (Bankr. E.D. Mo. 2004) ......................................8

In re Savage Indus., Inc., 43 F. 3d 714 (1st Cir. 1994) ............................................................8

In re SPM Manufacturing Corp., 984 F.2d 1305 (1st Cir. 1993) ...........................................15

In re TSIC, Inc., 393 B.R. 71 (Bankr. D. Del. 2008)..........................................................13,16

ii

In re W.R. Grace & Co., 475 B.R. 34 (D. Del. 2012) ..................................................11

Mission Iowa Wind Co. v. Enron Corp., 291 B.R. 39 (S.D.N.Y. 2003)..................................8

Neonatology Assocs., P.A. v. Comm'r, 299 F.3d 221 (3d Cir. 2002) ....................................17

Republic of Philippines v. Westinghouse Elec. Corp., 249 F.2d 653 (3d Cir. 1991) .............7

Rhone-Poulenc Basic Chems. Co. v. Am. Motorist Ins. Co., 616 A.2d 1192, 1195-96
        (Del. 1992).........................................................................................................17

Tristrata Tech. Inc. v. ICN Pharms., Inc., No. 01-150, 2004 U.S. Dist. LEXIS 6557
        (D. Del. Apr. 12, 2004) ......................................................................................7

United States v. Bergbauer, 602 F.3d 569 (4th Cir. 2010).......................................................12

## Statutes

11 U.S.C. § 363 ............................................................................................. passim.

11 U.S.C. § 503(b)............................................................................................4,10

11 U.S.C. § 507(a)(2) ..........................................................................................10

11 U.S.C. § 524(g)..............................................................................................11

11 U.S.C. § 1123 ..................................................................................................9

11 U.S.C. § 1124 ................................................................................................11

11 U.S.C. § 1129 .............................................................................................. passim.

26 U.S.C. § 1001 ................................................................................................12

26 U.S.C. § 1012 ................................................................................................12

26 U.S.C. § 6901 ................................................................................................12

## Rules

Fed. R. Bankr. P. 8005 .........................................................................................7

Fed. R. Bankr. P. 9019 ........................................................................................13

10164811.2

## INTRODUCTION

The United States has appealed from two orders entered by the Bankruptcy

Court in this case.  (See Docket Nos. 660, 838.)  *First*, the Bankruptcy Court approved

the sale of substantially all of debtors' assets under the auspices of 11 U.S.C. § 363 to the

secured lenders (the "Purchasers") and not as part of a confirmed Chapter 11 plan.  (See

Docket No. 617.)  *Second*, the Bankruptcy Court approved a compromise between the

Purchasers of debtors' assets and the Unsecured Creditors, whereby the Unsecured

Creditors received $3.5 million of estate property ahead of senior creditors, including

administrative claimants like the United States, in violation of the absolute priority rule

of 11 U.S.C. § 1129(b).[1]  (See Docket No. 794.)

On April 4, 2013, the Bankruptcy Court approved the sale of debtors' assets over

the objection of the United States (the "Sale Approval Order").  (See Docket No. 617.)

The terms of sale approved by the Bankruptcy Court included payments by the

Purchasers to some, but not all, administrative claimants.  The United States objected to

the sale because:  (1) debtors sought the benefits of bankruptcy protection, including the

ability to preclude the United States from pursuing collection of the tax from the

Purchasers, without the possibility of ever confirming a valid plan; (2) debtors will

───────────────

[1] While the United States has filed its notice of appeal and designation of issues and
record on appeal regarding the Bankruptcy Court's approval of this settlement, (see
Docket Nos. 838, 865), that appeal has not yet been docketed by the District Court.
Once docketing occurs, the United States will move to consolidate the two appeals.

10164811.2

recognize a taxable gain upon the sale resulting in a substantial administrative tax claim, for which no provision has been made; and (3) as a part of the transaction, the Purchasers will make direct payments, purportedly, but not really, outside the bankruptcy process, to some but not all administrative claimants in violation of the Bankruptcy Code's absolute priority rule.  (See Docket No. 496 at 1-2.)

On May 28, 2013, the Bankruptcy Court approved a settlement between the purchasers and the Unsecured Creditors Committee that resolved objections to the sale and the bidding procedures (the "Settlement Approval Order").  (See Docket No. 794.) By approving the settlement, the Bankruptcy Court is allowing payments, totaling $3.5 million, to the Unsecured Creditors Committee, again purportedly, but not really, outside the bankruptcy sale.  The United States objected to approval of the proposed settlement because it violated the Bankruptcy Code's absolute priority rule by distributing estate property to the Unsecured Creditors, who are junior creditors relative to administrative claimants.  (See Docket No. 774.)

The United States now moves to stay the distribution of funds under the Sale Approval Order and to stay the distribution of funds to the Unsecured Creditors Committee under the Settlement Approval Order while its appeals from these orders are pending.  The United States does not seek to delay transfer of management of debtors' health facilities or otherwise endanger the well-being patients.  For example, the Court can permit the transfer but to hold in escrow all funds, including those which will otherwise transfer "outside" of bankruptcy.

2

Absent a stay, the United States will be irreparably harmed.  The United States is harmed by the orders since its administrative claim will not be paid on par with all other administrative claims and junior creditors will be paid ahead of its administrative claim.  The terms of the Sale Approval Order also prevent the United States from pursuing the transferee of the assets for the unpaid taxes.[2]  If funds are disbursed and dissipated, it will be difficult at best, and likely impossible, for the United States to recover those funds should it succeed on its appeal.  The Court should preserve the status quo so that the United States can seek meaningful review from this Court.

## CASE BACKGROUND

Debtors initiated this case by filing a petition under Chapter 11 for reorganization under the Bankruptcy Code with no ability to obtain confirmation of a bankruptcy plan.  Rather, the proceeding was begun to obtain authorization under 11 U.S.C. § 363 to sell substantially all of the assets to senior secured lenders without payment of the taxes on the gain that the sale generates.  A sale under section 363 provides protections afforded by the Bankruptcy Code, including transfer of the assets free and clear of all liens and encumbrances.  In addition, a sale under section 363 provides a step-up in basis of the assets with potential tax benefits to the purchaser that

---

[2] The United States sought a stay from the Bankruptcy Court of both the Sale Approval Order and the Settlement Approval Order to prevent the disbursement of funds.  (See Docket No. 676.)  On June 11, the Bankruptcy Court denied the stay motion. (See Docket No. 842.)

10164811.2

would not be available if the debtor relinquished the security to the secured lenders.

Debtors have represented that they do not intend to pay any portion of the United

States' administrative tax claim.  Debtors, however, are attempting to pay the claims of

certain creditors, including counsel for debtors, counsel for the Unsecured Creditors

Committee, and select unsecured creditors.

Prior to filing the petition, debtors and the Purchasers entered into an asset

purchase agreement to sell substantially all of debtors' assets (the "APA").  (See Docket

No. 23 at 96.)  The APA sets forth the terms and conditions of the sale that was later

approved by the Bankruptcy Court.  Debtors have represented that the purchase price

of the assets was approximately $377 million.  Given that the debtors' tax basis in the

assets has been represented to be approximately $217, the sale of the assets resulted in a

substantial gain, and therefore, tax liability.  The tax liability resulting from the sale,

which according to debtors may be as much as $24 million, is an administrative expense

claim against the estate under 11 U.S.C. § 503(b)(1)(B).  The Purchasers obtain the assets

with a step-up in basis to the purchase price.  The step-up in basis provides tax benefits

to the Purchasers such as increased deductions for depreciation and amortization of

intangibles, and reduced gain on a subsequent sale.

The APA provides for payments to the professionals representing the debtors

and the Unsecured Creditors, and certain other administrative "wind-down" expenses,

of as much as $5 million.  These payments are defined by the APA as part of the

purchase price of the assets.  (See APA, Art. 3 (Purchase Price), section 3.1(a) (Docket

No. 23 at 124).)

4

After filing the petition, debtors sought approval of bidding procedures for the proposed sale.  (See Docket No. 23.)  The Unsecured Creditors opposed that request because "Debtors seek approval to sell . . . substantially all of their assets at an auction through a flawed bidding and sale process that is designed to benefit only the Debtors' Prepetition Lenders [*i.e.*, the Purchasers] . . . at the expense of other creditors."  (Docket No. 266, ¶1.)  According to the Unsecured Creditors, the Purchasers, through the bidding procedures and asset purchase agreement, "are using the sale process to make a credit bid (*utilizing liens which remain subject to challenge*) not only to purchase assets of the Debtors which were allegedly encumbered by the Prepetition Lenders' liens, but *also to sweep in assets that were not encumbered by the prepetition liens and which otherwise would be available to unsecured creditors*.  (Id. (emphasis added).)  The Unsecured Creditors summarized their position as follows:

> In sum, the Prepetition Lenders are using the Bankruptcy Court to conduct *a veiled foreclosure with no benefit to other creditors* and are doing so on the backs of the unsecured creditors *leaving these estates administratively insolvent*. Indeed, should the process go forward as proposed in the Bidding Procedures and Sale Motion, other creditors apparently would be left in a substantially worse position than had no transaction been consummated and the Prepetition Lenders had simply sought to foreclose.

(Id. (emphasis added).)

With the filing of their objection, the Unsecured Creditors were challenging multiple aspects of the proposed sale.  Their most significant challenge was to the validity of the Purchasers' liens on both assets that were allegedly encumbered by those

5

liens *and assets that were not encumbered, yet part of the proposed sale.*[3]  (See id. at 10-13.)  If

the Unsecured Creditors continued their challenges to the proposed sale, debtors and

the Purchasers would have faced significant difficulty in obtaining sale approval, which

could have possibly jeopardized debtors' ability to continue to operate its various long-

term care hospitals.

After debtors' bidding procedures motion was approved and after receiving no

bids in excess of the Purchasers' bid, debtors sought approval of the proposed sale to

the Purchasers.  Before filing an objection to the proposed sale, the Unsecured Creditors

agreed to a settlement – subject to Court approval – the terms of which were set forth in

a term sheet attached as Exhibit E to the proposed sale approval order.  (See Docket No.

583-1 at 127 (Ex. E).)  Under the proposed deal, in exchange for supporting the sale, and

not taking any actions against it (including agreeing not to solicit other parties to

object), the Unsecured Creditors received an aggregate amount of $3.5 million.  (See id.)

The Purchasers also agreed to forego any preference actions against unsecured

creditors.  (See id.)  Any such action could have resulted in additional sources of funds

to pay administrative creditors such as the United States.

---

[3] The importance placed on this argument is demonstrated by their first objection,
which was entitled "The Bidding Procedures Inappropriately Deem the Credit Bid by
the Stalking Horse Purchaser to Be a Qualifying Bid Notwithstanding that the
Committee Still Maintains the Right to Challenge the Prepetition Liens and Claims of
the Prepetition Lenders."  (Id. at 10-13.)

10164811.2

The settlement was incorporated into and became part of the sale.  (See id.)  The

Unsecured Creditors acknowledge that the proposed settlement is:

> [A]an agreement between the Buyer, the Lenders and the
> [Unsecured Creditors] Committee *to allocate proceeds
> derived from the sale* to fund [the $3.5 million settlement
> amount], in accordance with the Term Sheet.

(Docket No. 690, ¶16 (emphasis added).)

## ARGUMENT

This Court may stay the Sale Approval Order and Settlement Approval Order

pursuant to Federal Rule of Bankruptcy Procedure 8005 to the extent necessary to

minimize harm to the United States.  The Court should enter a stay to prevent

disbursement of funds to the administrative claimants and to the unsecured creditors

because the United States has shown: (1) a likelihood of success on the merits;

(2) irreparable harm absent a stay; (3) that issuance of the stay will not substantially

injure the other parties to the proceeding; and (4) that a stay is in the public interest.

See Republic of Philippines v. Westinghouse Elec. Corp., 249 F.2d 653, 658 (3d Cir.

1991).  "[E]qual weight for each factor is not required since the formula cannot be

reduced to a set of rigid rules."  Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.,

397 F. Supp. 2d 537, 547 (D. Del. 2005) (internal quotations omitted).  Rather, "courts

should use a flexible balancing approach."  Tristrata Tech. Inc. v. ICN Pharms., Inc., No.

01-150, 2004 U.S. Dist. LEXIS 6557, at *6 (D. Del. Apr. 12, 2004); see also In re Columbia

Gas Sys., No. 92-127-SLR, 1992 U.S. Dist. LEXIS 3253, at *4 (D. Del. Mar. 10, 1992)

(stating that likelihood of success on the merits means that a movant has a substantial case on appeal).

I.     THE UNITED STATES IS LIKELY TO PREVAIL ON THE MERITS.

The United States is likely to prevail on the merits of its appeals because both the Sale Approval Order and the Settlement Approval Order violate the statutory requirements of the Bankruptcy Code and Third Circuit precedent.  Through these orders, debtors, the Purchasers, and the Unsecured Creditors have "effectively predetermine[d], in significant part, the structure of an as yet to be drafted plan of reorganization and effectively evades the 'carefully crafted scheme' of the chapter 11 plan confirmation process."  In re On-Site Sourcing, Inc., 412 B.R. 817, 826 (Bankr. E.D. Va. 2009) (quotation omitted).

A.     **The Sale Approval Order Improperly Benefits Some Creditors To The Detriment Of Other Creditors Of The Same Class And It Precludes Confirmation Of A Plan That Complies With Chapter 11.**

This particular sale must be given "close factual scrutiny" because "the proportionate value of the assets being sold is high."  In re General Motors Corp., 407 B.R. 463, 492 n. 54 (Bankr. S.D.N.Y. 2009); see also In re Savage Indus., Inc., 43 F. 3d 714, 720 n.9 (1st Cir. 1994); Mission Iowa Wind Co. v. Enron Corp., 291 B.R. 39, 43 (S.D.N.Y. 2003).  "When permitted, the sale [of substantially all a debtor's assets under section 363] must comply with the Bankruptcy Code . . . ."  In re President Casinos, Inc., 314 B.R. 784, 785 (Bankr. E.D. Mo. 2004); see also Gen. Motors, 407 B.R. at 491 ("the debtor cannot enter into a transaction that would amount to . . . an attempt to circumvent the

10164811.2

chapter 11 requirements for confirmation of a plan of reorganization") (internal quotation marks omitted)).

The Bankruptcy Code does not permit a Chapter 11 plan or a sale under section 363 for the benefit of a single or select group of creditors, to the detriment of other creditors. Yet that is exactly what the Sale Approval Order did. The Sale Approval Order improperly approved the agreement to make payments "outside" the Bankruptcy to some, but not all, creditors with administrative claims. See In re Gulf Coast Oil Corp., 404 B.R. 407, 427-28 (Bankr. S.D. Tex. 2009) (denying approval of section 363 sale because, *inter alia*, administrative expenses would remain unpaid). The Sale Approval Order allows debtors to sell substantially all of the assets under the auspices of 11 U.S.C. § 363, and not as part of a confirmed Chapter 11 plan and it leaves virtually no assets to administer as part of plan.

The effect of the Sale Approval Order is a liquidation under Chapter 11 that does not comply with the requirements of Chapter 11 (or even Chapter 7). Accordingly, the Sale Approval Order, as a practical matter, precludes confirmation of a Chapter 11 plan. Because the Bankruptcy Court could not have confirmed a Chapter 11 plan that contained the terms of this sale, especially where certain creditors are unequally preferred over the United States, the Bankruptcy Court erred.

*First*, the terms of the Sale Approval Order do not satisfy the requirements of 11 U.S.C. § 1123. A plan must group similar claims into a class, such as administrative claims, and then "provide the same treatment for each claim or interest of a particular class . . . ." 11 U.S.C. §§ 1123(a)(1), (4). Failure to treat similar claims within a particular

9

class equitably precludes confirmation of a plan.  See In re New Century TRS Holdings, Inc., 407 B.R. 576, 592 (D. Del. 2009) ("if claims within the same class are not receiving the same treatment, and the holders of those claims being treated less favorably have not consented to the discrimination, the plan is not confirmable").  Debtors acknowledge that they are choosing to pay certain administrative expense claims (*i.e.*, the professional fees of debtors' counsel and counsel for the Unsecured Creditors, as well as certain wind-down expenses) and are not paying other administrative claims, including the tax liability resulting from the sale.  Their argument that the payments are being made "outside" the bankruptcy is meritless because these payments are being made *as part of the purchase price*.

*Second,* unless otherwise agreed to by the claimants, a Chapter 11 plan must satisfy all administrative claims in full.  See 11 U.S.C. 1129(a)(9)(A).  An administrative claim is a claim under 11 U.S.C. § 503(b), which is entitled to priority under 11 U.S.C. § 507(a)(2).  With respect to confirmation of a Chapter 11 plan, the Bankruptcy Code provides, "Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides (A) with respect to a claim of a kind specified in 507(a)(2) [such as the United States' administrative claim]. . . the holder of a claim of such class will receive on account of such claim cash equal to the allowed amount of such claim;. . ."  11 U.S.C. § 11292(a)(9)(A). The Sale Approval Order leaves some administrative claims, including the tax liability resulting from sale, unpaid.

*Third*, the Sale Approval Order impairs the United States' rights with respect to the administrative claim in violation of 11 U.S.C. § 1129(a)(7) and (8).  Under those

10

provisions, a plan may only be confirmed if, with respect to each class of impaired

claims, all the claim holders in a class are paid in full, agree to a lesser amount, or "each

holder of a claim or interest of such class" who has not accepted the plan "will receive

or retain under the plan on account of such claim or interest property of a value . . . that

is not less than the amount that such holder would so receive or retain if the debtor

were liquidated under chapter 7 of this title."[4]  Id.; see, e.g., In re W.R. Grace & Co., 475

B.R. 34, 142 (D. Del. 2012).  Under 11 U.S.C. § 1124, a class of claims is impaired "unless,

with respect to each claim or interest of such class, the plan – (1) leaves unaltered the

legal, equitable, and contractual rights to which such claim or interest entitles the holder

of such claim or interest."  The Sale Approval Order impairs the United States' legal

and equitable rights to its administrative claim because the order purports to bar the

United States from seeking payment of the taxes resulting from the sale from the

transferor, the transferred assets, and the transferee.[5]  Were it not for the order, which

purports to enjoin further collection, the United States could potentially assert legal and

---

[4] Under a hypothetical Chapter 7 liquidation, the United States would receive a pro rata
share, along with other administrative claimants, of the funds currently directed to
counsel for the debtors, counsel for the Unsecured Creditors, and to the select
unsecured creditors.  Although its claim would not be paid in full, it would receive
more than the $0.00 as currently provided under the Sale Approval Order.

[5] At least one court has suggested that "There is no provision for issuing injunctions in
§ 363.  Injunctions may be available in the context of a § 363 sale, but must be obtained
by commencing an adversary proceeding[, or] may be available as part of a chapter 11
plan.  See Bankruptcy Code § 524(g)." On-Site, 412 B.R. at 825 n.6.

10164811.2

equitable remedies to collect the unpaid taxes from the debtor, as well as the assets and/or the Purchasers.  See, e.g., 26 U.S.C. § 6901 (transferee liability).  Accordingly, the United States' legal and equitable rights are not left unaltered.

*Fourth,* the Sale Approval Order "discriminates unfairly" and is *not* "fair and equitable" in violation of 11 U.S.C. § 1129(b)(1).  Debtors and the Purchasers chose to structure this transfer as a sale.  A sale transaction carries with it various tax burdens and benefits to each party.  Generally, given an arms-length transaction, courts will respect the division of tax burdens and benefits between the parties, so long as the United States is not prejudiced.  See, e.g., Comm'r v. Danielson, 378 F.2d 771, 775 (3d Cir. 1967) ("And to allow the Commissioner alone to pierce formal arrangements does not involve any disparity of treatment because taxpayers have it within their own control to choose in the first place whatever arrangements they care to make."); United States v. Bergbauer, 602 F.3d 569, 577 (4th Cir. 2010).

In this case, debtors and the Purchasers attempt to eliminate some of the tax burdens, while retaining all the benefits, through the Sale Approval Order.  For example, by structuring the transfer as a sale, the transferee takes the property at a tax basis equivalent to the sale price of $377 million, rather than at debtors' basis, which they have represented to be substantially less.  If the Purchasers were to later sell the property, any tax liability would be calculated using the stepped-up basis of $377 million.  See 26 U.S.C. §§ 1001, 1012.  If the transfer had not been structured as a sale, and instead the property was merely abandoned by the debtor to the secured lender, the United States would not have any administrative claim, but the Purchasers would

12

have a lower basis and a commensurate larger tax liability upon a later sale.[6]  It is

therefore the structure of the transaction chosen by the debtors and the Purchasers, and

approved by the Bankruptcy Court, that gives rise to an administrative claim for taxes,

and it is the terms of the Sale Approval Order that impair the claim created by the order

and create tax benefits for the Purchasers.  Debtors and the Purchasers cannot now use

that same structure to avoid paying the United States' claim.

       **B.**      **The Settlement Approval Order Violates The Absolute Priority Rule by Paying Junior Unsecured Creditors Before the Administrative Claim of the United States.**

Because the Settlement Approval Order places the Unsecured Creditors in a

better position than administrative claimants such as the United States, in violation of

the absolute priority rule of 11 U.S.C. § 1129(b), the Bankruptcy Court erred.

Under Bankruptcy Rule 9019, bankruptcy courts may approve a compromise or

settlement of controversies arising within the bankruptcy case.  A settlement should be

approved only if the court concludes that the settlement is "fair and equitable."  In re

TSIC, Inc., 393 B.R. 71, 78 (Bankr. D. Del. 2008) (Gross, J.) (quoting In re Louise's, Inc.,

211 B.R. 798, 801 (D. Del. 1997)).  In the Chapter 11 context, "whether a particular

settlement's distribution scheme complies with the Code's priority scheme must be the

most important factor for a bankruptcy court to consider when determining whether a

---

[6] As previously noted, the Unsecured Creditors contended that the property "sold" exceeded the property subject to the liens of the secured lender.

settlement is 'fair and equitable' under Rule 9019." <u>In re Iridium Operating LLC</u>, 478

F.3d 452, 4464 (2d Cir. 2007).  Consideration of this factor alone "will often be

dispositive," because "[t]he court must be certain that parties to a settlement have not

employed a settlement as a means to avoid the priority structures of the Bankruptcy

Code." <u>Id.</u>

     The Third Circuit, in <u>In re Armstrong World Indus., Inc.</u>, 432 F.3d 507, 518 (3d

Cir. 2005, examined whether to confirm a proposed plan that included the consent of a

class of asbestos claimants to share a portion of its proposed distribution with equity

holders over the objection of senior creditors.  In conducting its analysis, the Third

Circuit found that it was "required to examine the 'fair and equitable' requirement for a

cram down, which invokes the absolute priority rule." <u>Id.</u> at 512.  "The absolute

priority rule is a judicial invention that predated the Bankruptcy Code," <u>id.</u>, but is now

codified for Chapter 11 bankruptcies in 11 U.S.C. § 1129.  The absolute priority rule

provides that a plan is "fair and equitable" with respect to an impaired, dissenting class

of claims or interests when (1) it pays the class's claims in full, or when (2) it does not

allow holders of any junior claims or interests to receive or retain property under the

plan "on account of" such claims or interests.  The rule was "at least designed to

address 'give-up' situations where a senior class gave property to a class junior to the

dissenting class." <u>Id.</u> at 513.  The Third Circuit concluded the proposed plan could not

be confirmed because it violated the absolute priority rule.  <u>See</u> <u>id.</u> at 518.

     The Third Circuit considered and distinguished cases where courts had allowed

payments by senior creditors to junior creditors, such as the First Circuit's decision in <u>In</u>

14

re SPM Manufacturing Corp., 984 F.2d 1305 (1st Cir. 1993) (a Chapter 7 proceeding), as well as Genesis Health, 266 B.R. 591 (Bankr. D. Del. 2001) and MCorp Fin. 160 B.R. 941 (S.D. Tex. 1993), stating, "they do not stand for the unconditional proposition that creditors are generally free to do whatever they wish with the bankruptcy proceeds they receive."   Armstrong, 432 F.3d at 518.

The facts of this case are similar to Armstrong and distinguished from cases like SPM.   In SPM, which was a Chapter 7 case, a secured creditor agreed to share the proceeds from its secured interest with unsecured creditors.   984 F.2d at 1307.   The First Circuit held that the absolute priority rule was not invoked "until all valid liens on the property are satisfied."   Id. at 1312 (citations omitted).   There was no objection to the validity of the secured creditors' liens or the fact that the liens encumbered all of debtors' property.   Because the secured creditor's claim absorbed all of debtors' assets, "there was nothing left for any other creditor," and the absolute priority rule did not come into play.   Id.   Unlike the unquestioned right of the secured lenders in SPM to the entirety of the estate, here the Unsecured Creditors were challenging both the validity of the Senior Lender's liens and whether they encumbered all of the assets being sold through the proposed sale.   (See supra 5-6.)   The Purchasers, therefore, did not hold an unchallenged right to the entirety of debtors assets, unlike the secured creditor in SPM. Were it not for the settlement, the Purchasers would have been forced to defend the validity of the claims to substantially all of debtors' property.

Moreover, like Armstrong, and unlike In re TSIC, Inc., this case involves property that was not separately contributed by the purchaser apart from the secured

15

creditors' liens.  See TSIC, 393 B.R. at 77 ("[t]he Joint Venture's funds are not proceeds

from a secured creditor's lien, do not belong to the estate, and will not become part of

the estate even if the Court does not approve the Settlement").  Unlike TSIC, which

involved "*a payment* of property that did not belong to the estate *by a non-creditor . . .*"

393 B.R. at 75 (emphasis added), here, the proposed payment is being made by the

Purchasers, who were also the secured lenders and are certainly creditors.

In this case, the Purchasers are not free to give, as part of a settlement or

otherwise, proceeds they are to receive from the sale to the Unsecured Creditors.  See

Armstrong, 432 F.3d at 514 (holding that creditors are not "generally free to do

whatever they wish with the bankruptcy proceeds they receive").  Rather, because the

Purchasers are to receive estate property through the sale, they are constrained "by the

statutory prohibitions of the absolute priority rule."  Id.  The Purchasers acted as a

conduit to send funds originating with debtor to the select administrative claimants and

the unsecured creditors.

In order to avoid Armstrong, the debtor, the Purchasers and the Unsecured

Creditors will likely argue that the payments are not distributed from estate property.

(See Docket No. 690, ¶¶27-29).  That contention is not supported by the facts of the sale,

including their own characterizations of the sale to the Bankruptcy Court.  Proceeds

from the sale of substantially all of debtors' assets are necessarily estate property.

Payment to the Unsecured Creditors on account of the sale, regardless of the form or

label placed upon it, is property of the estate under section 541, subject to the court's

administration under the statutory requirements of the Bankruptcy Code.  See On-Site,

16

412 B.R. at 825-28.  Moreover, the Unsecured Creditors have acknowledged that the proposed payment is derived from the proceeds of estate property.  (See Docket No. 690, ¶16 ("The Term Sheet [attached to the Asset Purchase Agreement and thereafter incorporated into the Sale Approval Order and the Settlement Approval Order,] represents an agreement . . .  *to allocate proceeds derived from the sale*") (emphasis added).)

The consideration paid for the sale includes all value given in exchange for the assets.  In this case, the Purchasers gave consideration for the assets in terms of satisfaction of prior indebtedness, cash placed in escrow for the payment of select administrative expenses, and cash to be distributed to the unsecured creditors.  To sweeten the deal, debtors released any claims for preference against the junior creditors.  Given that the purchase price was defined as including the escrow payments and that the settlement term sheet was included as part of the proposed sale approval order, any "reasonable person in the position of the parties would have thought" these payments were all part of the consideration paid for the sale.  Rhone-Poulenc Basic Chems. Co. v. Am. Motorist Ins. Co., 616 A.2d 1192, 1195-96 (Del. 1992).  There can be no doubt those payments to select administrative claimants and Unsecured Creditors came from estate property.  The cash for payments originated with cash held by the debtor and transferred to the purchaser as part of the sale – a classic circular flow of funds, the form of which should be disregarded as inconsistent with the substance of the transaction.  See Neonatology Assocs., P.A. v. Comm'r, 299 F.3d 221, 231 n.12 (3d Cir. 2002) ("The substance-over-form doctrine is applicable to instances where the 'substance' of a particular transaction produces tax results inconsistent with the 'form' embodied in the

17

underlying documentation, permitting a court to recharacterize the transaction in accordance with its substance."). The parties' chosen label is therefore irrelevant.

## II.   THE UNITED STATES WILL SUFFER IRREPARABLE HARM ABSENT A STAY.

The United States' objection to the Sale Approval Order and Settlement Approval Order, if sustained on appeal, would result in the pro-rata distribution of the escrow accounts described in the asset purchase agreement, as well as the amount paid by the Purchasers to the Unsecured Creditors, amongst all administrative expenses claimants, including the United States. If a stay is not granted and these amounts are distributed, the debtors, Senior Lender, and Unsecured Creditors could argue that the distribution should equitably moot the appeal. Although the United States would disagree with this position, it is nonetheless well aware that an equitable mootness argument can be fatal by mooting the appeal before the issues are even heard. And, as a practical matter, it would be difficult for the United States to collect funds distributed to and dissipated by the recipients.

Under the equitable mootness doctrine, an appeal should "be dismissed as moot when, even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable." In re Continental Airlines, Inc., 91 F.3d 553, 558-59 (3d Cir. 1996) (internal quotation omitted). The fact that the decision on a stay may be dispositive of the appeal is a factor that the court must consider in determining whether irreparable harm will result from the denial of the stay. See Republic of Philippines, 249 F.2d at 658; Fox Sports Net West 2, LLC v. Los Angeles Dodgers, LLC (In re Los Angeles Dodgers, LLC), 465 B.R. 18, 36-37 (D. Del. 2011) (acknowledging that any risk of

18

equitable mootness supports a finding of irreparable harm). Here, a stay is needed to prevent disbursement of the challenged amounts, because seeking disgorgement after the fact could be potentially so complicated as to be inequitable, or even useless, thereby causing irreparable harm to the United States.

### III. NO PARTY WILL INCUR SUBSTANTIAL INJURY UNDER A STAY.

Neither the debtors, Purchasers, nor Unsecured Creditors will face substantial injury if the Court enters the stay. "The general rule is that distribution should not occur except pursuant to a confirmed plan of reorganization, absent extraordinary circumstances." In re Conroe Forge & Mfg. Corp., 82 B.R. 781, 784 (Bankr. W.D. Pa. 1988) citing Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143 (3d Cir. 1986). Debtors have not proposed and the Bankruptcy Court has not approved a plan. The Bankruptcy Code contemplates that in a Chapter 11 proceeding, proceeds from a section 363 sale are ordinarily held for distribution at plan confirmation. The United States is seeking, through its stay motion, to prevent disbursement of the escrow accounts described in the asset purchase agreement and the settlement during the pendency of its appeal. If the United States does not prevail on its appeal, these payments will still be made. The inconvenience caused by delayed payment does not constitute substantial injury.

### IV. THE PUBLIC INTEREST WILL BE SERVED BY A STAY.

The public has a strong interest in this case because the terms of the Sale Approval and Settlement Approval Orders fundamentally controvert the language and purpose of the Bankruptcy Code. Through its appeal, the United States seeks to uphold the fundamental principles of the Bankruptcy Code, that similar claims are paid in the

10164811.2

same way, and that claims are paid in the order directed by the Bankruptcy Code.

Additionally, the public interest is served if the United States has the opportunity to

appeal according to the Bankruptcy Code and Rules.  Its ability to challenge these

orders should not be cut short by virtue of implementation of the very orders it is

challenging.  Therefore, the public interest will be served by a stay.

## CONCLUSION

For the reasons stated above, the United States requests the Court stay the Sale

Approval Order and Settlement Approval Order to the extent necessary to continue to

stay disbursement of the escrowed funds, and to add the settlement funds to the

escrow.

DATE: July 1, 2013

Respectfully submitted,

CHARLES M. OBERLY
United States Attorney

ELLEN W. SLIGHTS
Assistant United States Attorney

KATHRYN KENEALLY
Assistant United States Attorney

/s/ Christopher J. Williamson
CHRISTOPHER J. WILLIAMSON
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 227
Washington, DC 20044
Telephone: (202) 307-2250
Facsimile: (202) 514-6866
Christopher.J.Williamson@usdoj.gov

20

## CERTIFICATE OF SERVICE

I hereby certify that on this day, July 1, 2013, I electronically filed the foregoing

Memorandum in Support of the Motion of the United States for Stay with the Clerk of

the Court using the CM/ECF system.

/s/ Christopher J. Williamson
CHRISTOPHER J. WILLIAMSON
Trial Attorney, Tax Division
United States Department of Justice
P.O. Box 227
Washington, DC 20044
Tel: (202) 307-2250
Fax: (202) 514-6866
christopher.j.williamson@usdoj.gov

21