IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :

In re:                                 :   Chapter 11
                                            :

ICL HOLDING COMPANY, INC., *et al.*,     :   Case No. 12-13319 (KG)
                                            :

               Debtors.[1]         :   Jointly Administered
                                            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                            :

UNITED STATES OF AMERICA,           :
                                            :

              Appellant,        :
                                            :

   v.                                     :
                                            :   Civ. No. 13-924-SLR

ICL HOLDING COMPANY, INC., *et al.*,     :

              Appellees.       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## APPELLEES' MEMORANDUM OF LAW IN OPPOSITION TO THE UNITED STATES' MOTION FOR STAY

| | | |
|---|---|---|
| SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP |
| Anthony W. Clark (I.D. No. 2051) Kristhy M. Peguero (I.D. No. 4903) One Rodney Square P.O. Box 636 Wilmington, Delaware 19899-0636 (302) 651-3000 | Kenneth S. Ziman Four Times Square New York, New York 10036-6522 (212) 735-3000 | Felicia Gerber Perlman Matthew N. Kriegel 155 N. Wacker Dr. Chicago, Illinois 60606-1720 (312) 407-0700 |

Dated: Wilmington, Delaware
       July 15, 2013

*Counsel for Debtors and Debtors in Possession*

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: ICL Holding Company, Inc. (7662), Boise HCI, Inc. (2686), RC Services, L.L.C. (2279), ABC HCC, L.L.C. (2012), HICL Holdings, Inc. (3557), ICL Holdco, LLC (3233), ICL Intermediate Holdco, Inc. (7709), SACL Center, Inc. (N/A), CL Holding Company of Texas, LLC (9174), Holdings CL, Inc. (2090), HCLl at Tenaya, LLC (8443), ABC HCL, LLC (9674), HCL of Chester County, Inc. (6062), HCL of Dayton, Inc. (2086),  Fort Worth HCL, L.P. (5272), HCL of Mechanicsburg, LLC (5957), HCL of Milwaukee, Inc. (4291), HCL New Orleans, L.L.C. (4151), HCL of North Carolina, L.L.C. (1857), North Texas HCL, L.P. (2743), HCL of Northern Nevada, Inc. (0990), HCL of Pittsburgh, LLC (9672), ASHCL, LLC (6312), HCL of Sarasota, LLC (7045), HCL of South Texas, Inc. (5457), Investments of CL, L.L.C. (5041), CL Investments 2, LLC (4598), SMCL, L.L.C. (4309), CL REIT 1, Inc. (3708), CL REIT 2, Inc. (2075), HSCL of North Louisiana, LLC (2585), HSCN of Denver, Inc. (8584), HCN/Muskegon, Inc. (1802), Pittsburgh HS, LLC (6725) and HSAS, Ltd. (5386).

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................1

BACKGROUND ......................................................................................................................2

    A.    General Background ...........................................................................................2

    B.    The Sale ..............................................................................................................3

OBJECTION.............................................................................................................................4

    A.    The United States Is Not Likely To Prevail On The Merits. ...................................5

        (a)    The Appeal Is Moot. ........................................................................5

        (b)    The Escrows Are Not Property Of The Estate And Chapter 11 Plan Requirements Are Inapplicable To A Section 363 Sale.................................................................................................8

            (i)    The Escrows Are Not Property Of The Estate....................8

            (ii)    Chapter 11 Plan Requirements Are Inapplicable To The Sale. ...............................................................................10

    B.    The United States Would Not Suffer Irreparable Harm If The Stay Motion Is Denied. .........................................................................................11

    C.    Issuance Of The Stay Will Substantially Injure Other Parties.............................12

    D.    Issuance Of The Stay Is Not In The Public Interest..............................................13

CONCLUSION.......................................................................................................................15

# TABLE OF AUTHORITIES

## CASES

In re Alabama Aircraft Industries, Inc.,
    464 B.R. 120 (D. Del. 2012),
    dismissed as moot, 2013 WL 791869 (3d Cir. Mar. 5, 2013)..........................................6, 7

American Express Travel Related Services, Inc. v. Sidamon-Eristoff,
    669 F.3d 359 (3d Cir. 2012)................................................................................................5

In re Armstrong World Industries, Inc.,
    320 B.R. 523 (D. Del. 2005),
    aff'd, 432 F.3d 507 (3d Cir. 2005)....................................................................................12

In re Arthur Treacher's Franchisee Litigation,
    689 F.2d 1137 (3d Cir. 1982).............................................................................................5

Conestoga Wood Specialities Corp. v. Secretary of U.S. Department of Health & Human
    Services,
    2013 WL 1277419 (3d Cir. Feb. 8, 2013).......................................................................4, 5

Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery
    Ward Holding Corp.),
    242 B.R. 147 (D. Del. 1999)............................................................................................11

In re Darnell,
    834 F.2d 1263 (6th Cir. 1987) .........................................................................................12

In re Delaware & Hudson Railway Co.,
    90 B.R. 90 (D. Del. 1988).................................................................................................4

Diamond Shamrock Corp. v. Edwards,
    510 F.Supp. 1376 (D. Del. 1981).....................................................................................11

In re General Motors Corp.,
    407 B.R. 463 (Bankr. S.D.N.Y. 2009) .............................................................................11

Krebs Chrysler-Plymouth, Inc. v. Valley Motors, Inc.,
    141 F.3d 490 (3d Cir. 1998)...........................................................................................5, 7

NLRB v. Bildisco & Bildisco,
    465 U.S. 513 (1984)........................................................................................................14

NutraSweet Co. v. Vit-Maritime Enterprises, Inc.,
    176 F.3d 151 (3d Cir. 1999).............................................................................................5

In re Parker,
    499 F.3d 616 (6th Cir. 2007) ............................................................6

In re Pioneer Sample Book Co.,
    374 F.2d 953 (3d Cir. 1967)............................................................12

Pittsburgh Food & Beverage, Inc. v. Ranallo,
    112 F.3d 645 (3d Cir. 1997)............................................................7

In re Polaroid Corp.,
    2004 WL 253477 (D. Del. Feb. 9, 2004) ...........................................5

Republic of Philippines v. Westinghouse Electric Corp.,
    949 F.2d 653 (3d Cir. 1991)............................................................5

In re Rickel Home Centers, Inc.,
    209 F.3d 291 (3d Cir. 2000)............................................................6

In re TSIC, Inc.,
    393 B.R. 71 (Bankr. D. Del. 2008) ....................................................9

In re The Charter Co.,
    829 F.2d 1054 (11th Cir. 1987) ....................................................6, 7

In re Trans World Airlines, Inc.,
    2001 WL 1820326 (Bankr. D. Del. Apr. 2, 2001) ......................10, 11

In re U.S. Flow Corp.,
    332 B.R. 792 (Bankr. W.D. Mich. 2005).........................................10

United States v. Cianfrani,
    573 F.2d 835 (3d Cir. 1978)............................................................4

In re White Glove, Inc.,
    1998 WL 731611 (Bankr. E.D. Pa. Oct. 14, 1998)...........................10

In re World Health Alternative, Inc.,
    344 B.R. 291 (Bankr. D. Del. 2006) .................................................9

### DOCKETED CASES

In re PSA Successor Corp., No. 04-13030 (MFW) (Bankr. D. Del. Feb. 10, 2006) ......................9

### OTHER AUTHORITIES

COLLIER ON BANKRUPTCY § 507.02 (16th Ed.) .............................................................12

ICL Holding Company, Inc. ("ICL") and certain of its subsidiaries, the appellees and debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this objection (the "Objection") to the United States' Motion for Stay (Dist. Ct. D.I. 13) and the Memorandum in Support of the United States' Motion For Stay (the "Stay Motion") (Dist. Ct. D.I. 14). In support of the Objection, the Debtors respectfully state as follows:

**PRELIMINARY STATEMENT**

1.      By its Stay Motion, the United States seeks to stay the effectiveness of the Sale Order[2] only to the extent necessary to halt disbursements from the escrow accounts created pursuant to the APA at Closing.[3] The United States does not seek to stay the Sale Order in any other respect.

2.      The Bankruptcy Court approved a sale of substantially all of the Debtors' assets to the Purchaser, which included an agreement by the Purchaser to fund certain escrows from its own assets to assist in the orderly wind down of the Debtors' estates. While the United States has appealed the Sale, it did not seek or obtain a stay of the Sale, and the Sale closed on May 31, 2013. As a result, because the Sale was not stayed, and the relief requested by the United States would impermissibly affect the validity of the Sale, the Appeal has been rendered moot.

3.      On the merits, the United States misstates the nature of the transaction in asserting that the **_Debtors_** have chosen to pay certain administrative creditors and wind down expenses of

---

[2]      Capitalized terms used in the Preliminary Statement are defined herein.

[3]      The Stay Motion also seeks to stay the disbursement of funds provided by the Purchaser to the Committee pursuant to a settlement agreement (the "Settlement Agreement") approved by the Bankruptcy Court on May 28, 2013 (D.I. 794). The Debtors are not party to the Settlement Agreement and, therefore, the arguments set forth by the United States related to the propriety of the Settlement Agreement are not addressed by the Debtors herein.

the estates, while not providing for payment of the IRS's administrative tax claim. But, as the

United States implicitly concedes, the money used to fund the escrow accounts belongs to the

Purchaser and, therefore, is not estate property— disbursements simply are not being made from

Debtor funds.[4] The Purchaser determined to pay certain wind down expenses, professionals and

other parties *from its own funds*. Further, the Debtors' assets were sold pursuant to section

363(b), not a chapter 11 plan, and as such, the escrowed funds are not subject to the Bankruptcy

Code's distribution scheme. Moreover, the APA and the escrow agreements provide that the

escrowed funds be returned to the Purchaser if they are not being used for their intended

purposes. Consequently, the relief requested does not enhance the possibility of a recovery for

the United States, for which there is no opportunity, but only serves to harm the Debtors and

other creditors, and provide a windfall to the Purchaser.

4.      Accordingly, for the reasons set forth herein, the Debtors request that the Court

deny the Stay Motion.

## BACKGROUND

**A.      General Background**

5.      On December 11, 2012 (the "Petition Date"), the Debtors each commenced a case

by filing a petition for relief under title 11 of the United States Code (the "Bankruptcy Code")

(collectively, the "Chapter 11 Cases") in the United States Bankruptcy Court for the District of

Delaware (the "Bankruptcy Court"). By order dated December 11, 2012, the Chapter 11 Cases

were consolidated for procedural purposes. On December 21, 2012, the Office of the United

---

[4]     The crux of the United States' appeal, in favor of which it requests the stay, is that the Sale Order "improperly
approved the agreement to make payments *'outside'* the Bankruptcy to some, but not all, creditors with
administrative claims." (Stay Motion at 9) (emphasis added). But see id. at 17 (stating that the cash for
payments "originated with cash held by the debtor *and transferred to the purchaser* as part of the sale")
(emphasis added).  This necessarily concedes that the funds at issue, the disbursement of which the United
States seeks the stay, are not estate property but, rather, belong to the Purchaser.

States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee").

6.      The factual background regarding the Debtors, including their business operations, their capital and debt structure, and the events leading to the filing of the Chapter 11 Cases, is set forth in the Declaration of Phillip B. Douglas in Support of Chapter 11 Petitions and First Day Pleadings (D.I. 13), which was filed with the Bankruptcy Court on the Petition Date and is incorporated herein (the "First Day Declaration").

**B.      The Sale**

7.      On the Petition Date, the Debtors filed the Debtors' Motion for Orders: (A)(I) Establishing Bidding Procedures Relating to the Sale of Substantially All of the Debtors' Assets; Approving Expense Reimbursement; (III) Establishing Procedures Relating to the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, Including Notice of Proposed Cure Amounts; (IV) Approving form and Manner of Notice of All Procedures, Protections, Schedules and Agreements and (V) Scheduling a Hearing to Consider the Proposed Sale and (B)(I) Approving the Sale of Substantially All of the Debtors' Assets; (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (III) Granting Certain Related Relief (the "Sale Motion") (D.I. 23).

8.      On April 4, 2013, the Court entered the Order (I) Authorizing the Sale of Substantially All of the Debtors Assets Free and Clear of All Liens, Claims, Encumbrances and Interests; (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (III) Granting Certain Related Relief (the "Sale Order") (D.I. 617).

3

9.     The Debtors' assets, including all cash, were sold (the "Sale") to Hospital

Acquisition LLC (the "Purchaser")[5] pursuant to that certain Asset Purchase Agreement by and

between Purchaser, LCI Holdco LLC, LifeCare Holdings, Inc. and certain of its subsidiaries,

dated December 10, 2012 (as amended from time to time, the "APA").

10.     On April 17, 2013, the United States filed its Notice of Appeal (D.I. 660) with

respect to the Sale Order (the "Appeal"). On April 22, 2013, the United States filed a motion to

stay disbursements from the escrows created by the APA, but not to stay the Sale, in the

Bankruptcy Court (the "First Stay Motion") (DI. 676).[6] The Appeal was docketed as Case No.

13-924 in this Court on May 23, 2013.

11.     On May 31, 2013, the Sale closed (the "Closing").

12.     On June 11, 2013, the Bankruptcy Court denied the First Stay Motion, and on

July 1, 2013, the United States filed the Stay Motion currently before this Court.

### OBJECTION

13.     The granting of a stay pending appeal is extraordinary relief. United States v.

Cianfrani, 573 F.2d 835, 846 (3d Cir. 1978) (describing grant of stay pending appeal as

extraordinary relief); Conestoga Wood Specialities Corp. v. Sec'y of U.S. Dep't of Health &

Human Servs., No. 13-1144, 2013 WL 1277419, at *1 (3d Cir. Feb. 8, 2013) (same). The

requirements for obtaining a stay pending appeal are the same as those for obtaining a

preliminary injunction. In re Delaware & Hudson Ry. Co., 90 B.R. 90, 91 (D. Del. 1988). In

order to obtain a stay pending appeal, the United States must show that (i) it is likely to succeed

---

[5]     The Purchaser is an entity formed by the Debtors' prepetition secured lenders.

[6]     On April 26, 2013, the Committee filed the Motion of the Official Committee of Unsecured Creditors for Order Approving Compromise of Controversy and Approving Term Sheet in Aid of Consummation of Court-Approved Sale of Assets (the "Settlement Motion") (D.I. 690). On May 28, 2013, the Bankruptcy Court granted the Settlement Motion (D.I. 794).

on the merits, (ii) it will suffer irreparable harm, (iii) other parties in interest will not be substantially harmed by a stay, and (iv) the public interest lies in granting the stay. <u>Republic of Philippines v. Westinghouse Elec. Corp.</u>, 949 F.2d 653, 658 (3d Cir. 1991). "A plaintiff's failure to establish any element in its favor renders a preliminary injunction inappropriate." <u>NutraSweet Co. v. Vit-Mar Enterprises, Inc.</u>, 176 F.3d 151, 153 (3d Cir. 1999); <u>Conestoga</u>, 2013 WL 1277419, at *1. The United States has failed to meet its burden. It cannot show that the escrowed funds are estate property, or that chapter 11 plan requirements are applicable to such funds. Moreover, the United States will be in the same position whether a stay is granted or not, and the public is served by allowing the Sale to proceed as ordered. Consequently, the United States has failed to satisfy the requirements for extraordinary relief, and the Stay Motion should be denied.

**A.     The United States Is Not Likely To Prevail On The Merits.**

14.     While a court must consider the four factors outlined above, "[t]he moving party's failure to show a likelihood of success on the merits 'must necessarily result in the denial of a preliminary injunction.'" <u>American Exp. Travel Related Services, Inc. v. Sidamon-Eristoff</u>, 669 F.3d 359, 366 (3d Cir. 2012) (quoting <u>In re Arthur Treacher's Franchisee Litig.</u>, 689 F.2d 1137, 1143 (3d Cir. 1982)); <u>see also</u> <u>Conestoga</u>, 2013 WL 1277419, at *3 (denying request for stay because appellant had not established likelihood of success on merits); <u>In re Polaroid Corp.</u>, No. 02-1353, 2004 WL 253477, at *1 (D. Del. Feb. 9, 2004) (same). As described below, the United States is not likely to prevail on the merits, and the Stay Motion should be denied.

(a)     <u>The Appeal Is Moot</u>.

15.     As a preliminary matter, the United States is not likely to prevail on the merits because the Appeal is moot. An appeal is moot pursuant to section 363(m) if "(1) the underlying sale or lease was not stayed pending the appeal, and (2) the court, if reversing or modifying the authorization to sell or lease, would be affecting the validity of such a sale or lease." <u>Krebs</u>

Chrysler-Plymouth, Inc. v. Valley Motors, Inc., 141 F.3d 490, 499 (3d Cir. 1998). The United States did not seek or obtain a stay of the Sale, which closed on May 31, 2013. Therefore, the only determination for the Court on appeal is whether the relief requested by the United States would affect the validity of the Sale.

16.     The Third Circuit has not established a standard for what it means to "affect the validity" of a sale, but "courts undertaking this analysis focus on whether relief would impact the transaction as executed by the parties pursuant to the court's authorization." In re Alabama Aircraft Indus. Inc., 464 B.R. 120, 125 (D. Del. 2012), appeal dismissed as moot, No. 12-1290, 2013 WL 791869, at *1 (3d Cir. Mar. 5, 2013). Courts have used various phrases and examples to describe the types of relief that affect the validity of a sale, but a common theme is that the relief requested seeks to affect a "central element" of the transaction. Some elements that have been held to be "central" are the purchase price and other keys terms of a transaction. See In re The Charter Co., 829 F.2d 1054, 1056 (11th Cir. 1987) ("One cannot challenge the validity of a central element of a purchase, the sale price, without challenging the validity of the sale itself."); see also In re Rickel Home Centers, Inc., 209 F.3d 291, 306 (3d Cir. 2000) (finding "common sense" would lead to conclusion that reversal of order excising use restriction from lease would affect value and, therefore, validity of sale); In re Parker, 499 F.3d 616, 622 (6th Cir. 2007) (finding that relief requested would "materially modify the asset purchased" and affect validity of the sale).

17.     The United States continues to assert that it does not oppose the transfer of the assets to the Purchaser and is not seeking to vacate the Sale Order, but simply objects to the "structure" of the Sale approved by the Bankruptcy Court. (June 11, 2013 Hr'g Tr. at 7). Despite the United States' attempt to minimize the ramifications of the relief it is seeking, it is ultimately

requesting that the APA be rewritten and that the Escrows (as defined below) be returned to the Debtors' estates. Such relief, if granted, would require rewriting the APA and plainly affect the validity of the Sale.

18.      The United States concedes that the consideration paid for the Debtors' assets included the Escrows. (Stay Motion at 4). If the escrowed funds are returned to the Debtors' estates, in contravention of the Sale Order, the APA and the escrow agreements, the Purchaser will have received less than it bargained for in exchange for the consideration it provided to the Debtors. Such a result impermissibly affects the validity of the Sale and renders the Appeal moot. See Krebs, 141 F.3d at 500 ("a refund would be an attack on the sale price, impermissibly affecting the validity of the sale); Pittsburgh Food & Beverage, Inc. v. Ranallo, 112 F.3d 645, 650 (3d Cir. 1997) (finding that, if bankruptcy court ordered payment of additional money, "surely the court's order would affect the validity of the sale because the order would be founded on a holding that the sale price was inadequate"); The Charter Co., 829 F.2d at 1056. Moreover, if the escrowed funds are returned to the Purchaser because the funds are not being used for their intended purposes, as required by the APA and the escrow agreements, the Debtors and their estates would receive less for their assets than was bargained for.

19.      Second, the funding of the Escrows was a highly negotiated and central aspect of the APA, particularly because it affected the purchase price. Vacating the Escrows would itself affect the validity of the Sale. Alabama Aircraft Indus., 464 B.R. at 125 (finding that asset purchase agreement was conditioned upon creation of trust and vacating trust would nullify sale).

20.      As set forth herein, the United States did not seek or obtain a stay of the Sale Order, and the relief it seeks would affect the validity of the Sale. Therefore, the Appeal is moot

pursuant to section 363(m), and the United States is not likely to prevail on the merits. The Stay

Motion should be denied.

> (b)  The Escrows Are Not Property Of The Estate And Chapter 11 Plan Requirements Are Inapplicable To A Section 363 Sale.

21.     The United States contends that the Bankruptcy Court erred in approving a

section 363 sale that did not meet chapter 11 plan requirements, particularly a sale including

escrow arrangements that provide payment to some, but not all, similarly situated creditors. The

United States fundamentally misstates both the facts of this particular sale and the legal

requirements necessary to complete a sale pursuant to Bankruptcy Code section 363(b). Not only

are the escrowed funds not estate property, but chapter 11 plan requirements do not apply to a

section 363(b) sale.

> (i)  The Escrows Are Not Property Of The Estate.

22.     In this case, the Debtors did not receive cash proceeds from the Sale, and the

Escrows were not funded with property of the estate. The Purchaser has a first priority security

interest in substantially all of the Debtors' assets. The Sale was structured as a credit bid in

which the Purchaser acquired the Debtors' assets, including its cash, in exchange for a release of

the Debtors' debt obligations that were credit bid. The APA provided for the creation and

funding, *from the assets of the Purchaser*, of three escrow accounts — an escrow for payment

of accrued and unpaid, pre-Closing fees and expenses of the Debtors' professionals (the "Debtor

Professionals Escrow"), an escrow for payment of accrued and unpaid, pre-Closing fees and

expenses of the Committee's professionals (the "Committee Professionals Escrow" and, together

with the Debtor Professionals Escrow, the "Professional Fees Escrows") and a wind down

escrow (the "Wind Down Escrow" and, together with the Professional Fees Escrows, the

"Escrows"). The Escrows were funded at Closing by the Purchaser, from the cash that it

8

purchased from the Debtors, in order to aid in the orderly resolution of the Chapter 11 Cases. Therefore, the Escrows are not property of the estate and are not subject to the Bankruptcy Code's distribution scheme.

23.     The United States asserts that payments made pursuant to the Sale Order "came from estate property," while simultaneously conceding that the money used to fund the Escrows was "transferred to the [P]urchaser as part of the [S]ale." (Stay Motion at 17). If the Debtors' cash was purchased by the Purchaser, as the United States concedes, it is unclear how such cash remains property of the estate.[7] The United States has not provided, nor can it provide, any evidence to suggest that the Purchaser was oversecured and, therefore, not entitled to all of the assets it purchased. Without such evidence, the United States' contention that the Escrows are property of the estate has no legal or factual basis.

24.     The Bankruptcy Court denied the First Stay Motion on the grounds that the Escrows were not estate property.[8] (June 11, 2013 Hr'g Tr. at 33-34). Courts in this and other districts have reached the same conclusion when evaluating similar scenarios. See In re TSIC, Inc., 393 B.R. 71, 77 (Bankr. D. Del. 2008) (finding that funds to be paid by non-creditor purchaser of debtors' assets to unsecured creditors was not estate property); In re World Health Alternative, Inc., 344 B.R. 291, 297 (Bankr. D. Del. 2006) (noting that money paid to general unsecured creditors pursuant to settlement agreement between debtors, secured lenders and creditors' committee "is a carve out of the secured creditor's lien and not estate property."); In re

---

[7]    The United States requests that the Court disregard this arguably dispositive fact— that the funds at issue do not belong to the Debtors— with reference to inapplicable principles of tax jurisprudence. Both the form and the substance of the transaction (i.e., the sale of assets to the Purchaser, including cash, pursuant to section 363(b) of the Bankruptcy Code) were vigorously negotiated by the parties, are embodied in the APA, and were approved by the Bankruptcy Court.

[8]    The Bankruptcy Court also found that the funds to be distributed pursuant to the Settlement Agreement were not property of the estate. (June 11, 2013 Hr'g Tr. at 33-34); (May 28, 2013 Hr'g Tr. at 75) ("[T]he Court finds that the settlement proceeds here are not property of the debtors' estate.").

PSA Successor Corp., No. 04-13030 (MFW) (Bankr. D. Del. Feb. 10, 2006) (approving

settlement between secured creditor and creditors' committee in administratively insolvent case);

In re White Glove, Inc., No. 98-12493, 1998 WL 731611, at *7 (Bankr. E.D. Pa. Oct. 14, 1998)

(court approved sale in which chapter 7 trustee sought to sell assets and bank agreed to carve out

from proceeds of sale to be paid to certain creditors over objection of unsecured creditor);  In re

U.S. Flow Corp., 332 B.R. 792, 798 (Bankr. W.D. Mich. 2005) (money to be paid to

professionals pursuant to court-approved carve out of secured creditor's cash collateral is not

property of estate and is not recoverable for benefit of estate).

> (ii)    Chapter 11 Plan Requirements Are Inapplicable To The Sale.

25.    The IRS has previously conceded that the applicable standard for approving a

section 363(b) sale is the existence of a sound business purpose. (D.I. 496 at 2). Despite an

abundance of facts supporting that conclusion, the IRS essentially asserts that there cannot be a

sufficient sound business purpose if a section 363(b) sale fails to treat similarly situated creditors

in the same fashion. That is simply wrong.

> The purpose of a § 363(b) sale is to maximize the benefit to the debtor's entire
> estate. Where a sale results in disparate treatment of similarly situated creditors
> the sale may appear to be at the expense of individual creditor constituencies.
> However, if the sale is in the best interests of the estate it follows that the entire
> estate suffers in the absence of the sale.

In re Trans World Airlines, Inc., No. 01-00056, 2001 WL 1820326, at *11 (Bankr. D. Del. Apr.

2, 2001) [hereinafter "TWA"]. The Sale clearly meets this standard. It allows the business to

continue as a going concern, preserves jobs and protects patients from an interruption in care.

26.    Furthermore, the Debtors are not required to meet chapter 11 plan requirements,

including sections 1123, 1124 and 1129, in order to effectuate a sale pursuant to section 363(b).

The plain language of section 363(b) and relevant case law make clear that chapter 11 plan

requirements do not apply to a sale pursuant to section 363(b), which generally must only be

shown to be within a debtor's sound business judgment. See <u>TWA</u>, 2001 WL 1820326, at *11 ("First, nothing in § 363 suggests that disparate treatment of creditors, such as is likely to occur here, disqualifies a transaction from court approval."); <u>Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)</u>, 242 B.R. 147, 154 (D. Del. 1999) (holding that debtors are not required to show reasonable prospect of successfully reorganizing when attempting to use property pursuant to section 363(b)); <u>see also</u> <u>In re General Motors Corp.</u>, 407 B.R. 463, 487 (Bankr. S.D.N.Y. 2009) ("Most significantly, neither section 1123(b)(4) nor any other section of the Code trumps or limits section 363").

27.     The United States has not shown that it is likely to succeed on the merits of its appeal and, consequently, the Stay Motion should be denied.

**B.     The United States Would Not Suffer Irreparable Harm If The Stay Motion Is Denied.**

28.     "It is particularly important that a movant show irreparable injury. Indeed, it is the fact that injury may occur which cannot be repaired or compensated for at the end of the litigation that supplies the very rationale for granting any sort of relief before a full hearing on the merits." <u>Diamond Shamrock Corp. v. Edwards</u>, 510 F.Supp. 1376, 1386 (D. Del. 1981). The United States claims that, if it is successful on appeal, it would be entitled to a pro-rata distribution of the funds in the Escrows. (Stay Motion at 18). That is not correct. There is no scenario in which the United States will recover on its administrative claim against the Debtors and, therefore, the United States would not suffer any harm without a stay.

29.     The Purchaser has a perfected and uncontested first priority lien on substantially all of the Debtors' assets. As described above, the Purchaser has funded the Escrows from its own assets and is entitled to the proceeds of its lien. "[A]s a general rule, if a lien is perfected, it must be satisfied out of the asset(s) it encumbers before any proceeds of the asset(s) are available

11

to unsecured claimants, including those having priority (such as holders of administrative claims)." <u>See</u> <u>In re Armstrong World Indus., Inc.</u>, 320 B.R. 523, 538 (D. Del. 2005) (quoting <u>In re Darnell</u>, 834 F.2d 1263, 1265 (6th Cir. 1987)), <u>aff'd</u>, 432 F.3d 507 (3d Cir. 2005); <u>see also</u> <u>In re Pioneer Sample Book Co.</u>, 374 F.2d 953, 957 (3d Cir. 1967) (finding that prior perfected creditor was entitled to satisfy its claim out of its security or proceeds thereof leaving next secured creditor in line with no recovery); COLLIER ON BANKRUPTCY § 507.02 (16th Ed.) ("The holder of the lien will generally be entitled to the first proceeds received from disposition of property subject to the lien.").

30.     Moreover, as required by the APA, each escrow agreement provides that any money not used for its intended purposes will be returned to the Purchaser. Even if the United States succeeded on appeal, the escrowed funds would not revert to the Debtors' estates or otherwise be available for distribution to creditors, as the funds are not estate property.[9] Accordingly, the United States will not be irreparably harmed if a stay is not issued, and the Stay Motion should be denied.

**C.      Issuance Of The Stay Will Substantially Injure Other Parties.**

31.     The Escrows were created to allow for the orderly wind down of the Debtors' estates. The United States summarily claims, without any supporting facts or evidence, that no party in interest would be substantially harmed by a delay in disbursement of the Escrows. The United States fails to recognize the harm that would result if disbursements from the Wind Down Escrow were stayed. Among other things, the Wind Down Escrow provides funds for the payment of pre-Closing property taxes as well as quarterly fees due to the U.S. Trustee and

---

[9]    The United States would be in the same position if the assets has been foreclosed upon or sold outside of bankruptcy, but hundreds of other creditors and the Debtors' businesses would have suffered unnecessarily.

certain expenses incurred by the Debtors post-Closing, including the fees and expenses of the
Debtors' wind down administrator and retained professionals. The payment of these expenses is
critical to an orderly wind down of the Debtors' estates and preserves the value of the business
going forward. A stay of disbursements from the Wind Down Escrow would unnecessarily
paralyze the Debtors from taking actions (i) required by law, (ii) to fulfill their fiduciary
obligations and (iii) required by the APA.

32.     Moreover, the professionals whose accrued and unpaid, pre-Closing fees and
expenses are being held in the Professional Fees Escrows are entitled to payment pursuant to the
Sale Order, subject to the interim compensation procedures and approval by the Bankruptcy
Court. Services have already been performed by these professionals within the scope of their
respective retentions approved by the Bankruptcy Court. Delaying the payment of professionals
for services already performed in assisting the Debtors to, among other things, administer the
estates, effectuate the Sale and fulfill their fiduciary duties represents a significant harm to the
affected professionals. Accordingly, the United States has failed to show that third parties will
not be harmed by issuance of a stay, and the Stay Motion should be denied.[10]

**D.      Issuance Of The Stay Is Not In The Public Interest.**

33.     The United States wrongly contends that the public interest is served by its effort
to thwart an attempt by the Debtors to "controvert the language and purpose of the Bankruptcy
Code." (Stay Motion at 19). To the contrary, the fundamental and overriding objective of a
business reorganization in bankruptcy is to enable a debtor to preserve its business as a going

---

[10]    The United States would have the Court interrupt the wind down of the Debtors' estates and delay payments to
professionals through imposition of a stay with no offsetting benefit. If not used for the purposes set forth in the
APA, the funds in the Escrows will ultimately revert to the Purchaser. As the Bankruptcy Court recognized
when considering the Settlement Motion, a return of the Escrows to the Purchaser would only serve to lower the
amount of the purchase price and, therefore, the value received by the Debtors' estates. (May 28, 2013 Hr'g Tr.
at 75).

concern. See NLRB v. Bildisco & Bildisco, 465 U.S. 513, 528 (1984) ("The fundamental purpose of reorganization is to prevent a debtor from going into liquidation, with an attendant loss of jobs and possible misuse of economic resources.") (internal citation omitted). There was no alternative transaction available to the Debtors that would have allowed their business to continue as a going concern or that would have provided greater recoveries for creditors than the Sale. The public is well-served by the continuation of the Debtors' business, which is essential to its patients. The public is also served by the Debtors' successful use of the Bankruptcy Code to achieve its fundamental purpose. Jobs have been saved, substantial liabilities have been assumed, and communities will continue to be served by the hospitals sold.

34.     Moreover, it is in the public interest to encourage counsel and other professionals to assist in cases that may result in administrative insolvency. Such assistance may be chilled by the possibility of a delay in payment or non-payment in a scenario such as this. Issuance of the stay does nothing to serve the public interest since the Sale Order achieves the result intended by the Bankruptcy Code and, consequently, the Stay Motion should be denied.

*(Remainder of page intentionally left blank)*

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court (i) deny the Stay

Motion and (ii) grant such other relief as may be just and proper.

Dated: Wilmington, Delaware
      July 15, 2013

                                    SKADDEN, ARPS, SLATE, MEAGHER &
                                    FLOM LLP

                                    */s/ Anthony W. Clark*
                                    Anthony W. Clark (I.D. No. 2051)
                                    Kristhy M. Peguero (I.D. No. 4903)
                                    One Rodney Square
                                    P.O. Box 636
                                    Wilmington, Delaware 19899-0636
                                    Telephone: (302) 651-3000
                                    Fax: (302) 651-3001

                                    - and -

                                    Kenneth S. Ziman
                                    Four Times Square
                                    New York, New York 10036-6522
                                    Telephone: (212) 735-3000
                                    Fax: (212) 735-2000

                                    - and -

                                    Felicia Gerber Perlman
                                    Matthew N. Kriegel
                                    155 N. Wacker Dr.
                                    Chicago, Illinois 60606
                                    Telephone: (312) 407-0700
                                    Fax: (312) 407-0411

                                    Counsel for Debtors and Debtors in
                                    Possession

15