# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| LCI HOLDING COMPANY, INC., et al., | ) |
| | ) Bankr. Case No. 12-13319 (KG) |
| Debtors. | ) |
| | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) Case No. 1:13-cv-00924-SLR |
| Appellant, | ) |
| | ) **Re: D.I. 13, 14** |
| v. | ) |
| | ) |
| LCI HOLDING COMPANY, INC., et al., | ) |
| | ) |
| Appellees. | ) |

## OFFICIAL COMMITTEE OF UNSECURED CREDITORS' OBJECTION TO THE UNITED STATES' MOTION FOR STAY AND MEMORANDUM IN SUPPORT

Dated:  July 15, 2013

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (Bar No. 2436)
Bradford J. Sandler (Bar No. 4142)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
Wilmington, DE  19801
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400
Email: ljones@pszjlaw.com
        bsandler@pszjlaw.com
        joneill@pszjlaw.com

Counsel to the Official Committee of Unsecured Creditors

**Table of Contents**

**Page**

Introduction ............................................................................................................ 1

Background ............................................................................................................ 1

Preliminary Statement ........................................................................................... 3

Argument ............................................................................................................... 6

    A.     The United States Has Not Met Any of the Standards  Required for Obtaining
          a Stay Pending Appeal ........................................................................... 6

    B.     The IRS Has Not Made a Strong Showing That It is   Likely to Succeed on
          the Merits of Its Appeal ......................................................................... 8

    C.     The IRS Has Not Established That It  Will be Irreparably Injured Absent a
          Stay ...................................................................................................... 14

    D.     The Issuance of a Stay Has the Potential to   Substantially Injure Creditors........ 16

    E.     Issuance of a Stay is Not in the Public Interest..................................... 16

i

## Table of Authorities

**Page**

**Cases**

*Coast Cities Truck Sales, Inc. v. Navistar Internat'l Transp. Co.* (*In re Coast Cities Truck Sales, Inc.*), 147 B.R. 674, 676 (D.N.J. 1992) ................................................................................ 7

*Dai-Ichi Kangyo Bank, Ltd. V. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 154-55 (D. Del. 1999) ............................................................ 10

*Family Kingdom, Inc. v. EMIF N.J. Ltd. P'ship*, 225 B.R. 65, 69 (D.N.J. 1998) .......................... 7

*Fox Sports Net West 2, LLC v. Los Angeles Dodgers LLC (In re Los Angeles Dodgers LLC)*, 465 B.R. 18, 28 (D. Del. 2011) ................................................................................................. 7

*Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988) ............. 7

*Glass v. Isotec Int'l, Inc. (In re Southwest Recreational Indus., Inc.)*, 2008 WL 7874256, at *3 (Bankr. N.D. Ga. July 14, 2008) ................................................................................... 17

*Hazelbaker v. Hope Gas, Inc. (In re Rare Earth Minerals)*, 445 F.3d 359, 363 (4th Cir. 2006) . 17

*In re 203 North LaSalle St. P'ship*, 190 B.R. 595, 597-98 (N.D. Ill. 1995) ................................ 15

*In re ANC Rental Corp.*, No. 01-11220, 2002 WL 1058196, at *2 (D. Del. May 22, 2002) ......... 7

*In re Armstrong World Indus., Inc.*, 432 F.3d 507 (3d Cir. 2005) ......................................... 11, 12

*In re Bd. of Dirs. of Multicanal S.A.*, No. 04–10280, 2005 Bankr. LEXIS 1865 at *6 (Bankr. S.D.N.Y. Jan. 6, 2005) ................................................................................................... 15

*In re Blackwell*, 162 B.R. 117, 120 (E.D. Pa. 1993) ................................................................. 7

*In re Broadstripe, LLC*, No. 09-10006 (CSS), 2009 WL 774401, at *3 (D. Del. March 26, 2009) 8

*In re Charter Co.*, 72 B.R. 70, 72 (Bankr. M.D. Fla. 1987) ...................................................... 15

*In re Chrysler LLC*, 405 B.R. 84, 96 (Bankr. S.D.N.Y. 2009) ................................................. 10

ii

*In re Country Squire Assocs. of Carle Place, L.P. v. Rochester Comm. Savs. Bank*, 203 B.R. 182, 184 (B.A.P. 2d Cir. 1996) ................................................................................. 8

*In re Delaware & Hudson Ry. Co.*, 90 B.R. 90, 91 (Bankr. D. Del. 1988) ................................... 7

*In re FRG*, 115 B.R. 72, 73 (E.D.Pa. 1990) .................................................................................. 8

*In re General Motors Corp.*, 407 B.R. 463, 491 (Bankr. S.D.N.Y. 2009) ............................. 9, 11

*In re Great Barrington Fair and Amusement, Inc.*, 53 B.R. 237, 241 (Bankr. D. Mass. 1985) ... 18

*In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 118 (3d Cir. 2004) ................................... 8

*In re Kmart Corp.*, No. 02–C–9257, 2002 WL 31898195, at *1 (N.D. Ill. Dec. 30, 2002) ......... 15

*In re Savage & Assocs., P.C.*, 2005 WL 488643, at *2 (S.D.N.Y. Feb. 28, 2005) ...................... 17

*In re SPM Mfg. Corp.*, 984 F.2d 1305 (1st Cir. 1983) ................................................................ 12

*In re Trans World Airlines, Inc.,* 2001 WL 1820326 at *11 (Bank. D. Del. 2001) ............... 10, 17

*In re TSIC, Inc.*, 393 B.R. 71, 77 (Bankr. D. Del. 2008) ....................................................... 11, 12

*In re TWA*, No. 01–56, 2001 Bankr. LEXIS 723 at *28–29 (Bankr. D. Del. Mar. 27, 2001) ...... 15

*In re World Health Alternatives, Inc.*, 344 B.R. 291, 299 (Bankr. D. Del. 2006) ................. 11, 12

*Jarboe v. Yukon Nat'l Bank, (In re Porter)*, 54 B.R. 81, 82 (Bankr. N.D. Okla. 1985) .............. 17

*Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1203 (3d Cir. 1991) .......................... 7

*Morgan v. Polaroid Corp*, (*In re Polaroid Corp.*) No. 02-1353, No. 01-10864, 2004 WL 253477, at *1 (D. Del. Feb. 9, 2004) ............................................................................................. 7, 8

*Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 658 (3d Cir. 1991) ............. 7

*Scott v. Nat'l Century Fin. Enters. (In re Balt. Emergency Servs. II Corp.)*, 432 F.3d 557, 560 (4th Cir. 2005) ...................................................................................................................... 17

*VFB L.L.C. v. The Money's Trust* (*In re VF Brands, Inc*.), 282 B.R. 134, 137 (Bankr. D. Del. 2002) ....................................................................................................................................... 6

iii

*Virginia Dep't of Med. Assistance Servs. v. Shenandoah Realty Partners (In re Shenandoah Realty Partners)*, 248 B.R. 505, 510 (W.D. Va. 2000)............................................................ 15

iv

**Introduction**

The Official Committee of Unsecured Creditors (the "Committee") of LCI

Holding Company, Inc. ("LCI") and certain of its subsidiaries, including, but not limited to,

LifeCare Holdings, Inc. ("Lifecare"), the debtors and debtors in possession (collectively, the

"Debtors") in the above-captioned cases under chapter 11 of title 11 of the United States Code

(the "Bankruptcy Code") pending in the United States Bankruptcy Court for the District of

Delaware (the "Bankruptcy Court"), hereby files this objection to the motion for stay pending

appeal (the "Motion") [D.I. 13] and the supporting memorandum [D.I. 14] filed by the United

States of America on behalf of the Internal Revenue Service (the "IRS").  In support of this

Objection, the Committee submits as follows:

**Background**

1.      This appeal arises from the Bankruptcy Court's approval of the sale of

substantially all of the Debtors' assets (the "Sale") to an entity formed by the Debtors'

prepetition senior secured lenders (the "Purchaser"), which acquired those assets, including the

Debtors' cash, through a credit bid.  Pursuant to the Purchaser's credit bid, it acquired the

Debtors' assets in exchange for a release of the Debtors' debt obligations.  The asset purchase

agreement governing the sale (the "APA") provided for the creation and funding *from the assets

of the Purchaser* of three escrow accounts consisting of (i) an escrow account to pay the accrued

and unpaid, pre-closing fees and expenses of the Debtors' professionals; (ii) an escrow account

to pay the accrued and unpaid pre-closing fees and expenses of the Committee's professionals;

and (iii) an escrow account to provide for payment of wind down expenses and to fund

1

distributions to unsecured creditors (collectively, the "Purchaser Escrow Accounts").  The Purchaser Escrow Accounts were funded solely by the Purchaser from the cash that it purchased from the Debtors to complete the orderly wind down of the Debtors.  The cash that funded the Purchaser Escrow Accounts belonged to the Purchaser as of the closing of the Sale because it was part of the assets that the Purchaser acquired under the APA.  The APA also provides that amounts not used to satisfy the expenses provided for under each Purchaser Escrow Account are to be returned to the Purchaser.

2.       On April 4, 2013, the Bankruptcy Court entered an order (the "Sale Order") [Bankr. Docket No. 617] approving the terms of the Debtors' proposed sale of substantially all of their assets (the "Sale") and overruling the IRS's objection to the Sale.  In so ruling, the Bankruptcy Court followed applicable precedent in this District and rejected the IRS's arguments that the Sale was without a sound business purpose and subverted chapter 11 plan requirements.  On April 17, 2013, the IRS filed its notice of appeal of the Sale Order [Bankr. Docket No. 660].  On April 22, 2013, the IRS filed its motion for stay of the Sale Order pending appeal in the Bankruptcy Court.

3.       On April 26, 2013, the Committee filed its motion (the "Term Sheet Motion") for approval of a term sheet (the "Term Sheet") that consummated the aforementioned settlement to resolve the objections of the Committee to the Sale and related bidding procedures [Bankr. Docket No. 690].  On May 28, 2013, the Bankruptcy Court entered the order approving the Term Sheet (the "Term Sheet Order") in connection with the Sale [Bankr. Docket No. 794].

2

On June 7, 2013, the IRS filed its notice of appeal of the Term Sheet Order [Bankr. Docket No. 838].

4.      On June 11, 2013, the Bankruptcy Court denied the IRS's motion for a stay pending its appeal of the Sale Order after a hearing.  The Bankruptcy Court held that the funds to be distributed by the Purchasers under the Term Sheet settlement for general unsecured creditors were not property of the estate.  *See* Hr'g Tr. 6/11/13 at 33-34 ("This was a contract, and the funds belong to the purchasers not to the debtors' estate.")  On July 1, 2013, the IRS filed this Motion in this Court seeking a stay pending appeal of the Sale Order.

**Preliminary Statement**

5.      The IRS seeks to stay the distribution of the Purchaser's funds under the APA, the Sale Order and the Term Sheet Order for the benefit of general unsecured creditors while its appeals are pending.  As a preliminary matter, the Motion should be denied because there are no circumstances under which IRS could recover on its alleged administrative claim against the Debtors regardless of the outcome of its various appeals.  This is because any unused cash funds in the Purchaser Escrow Accounts, which were funded by the Purchaser, will revert back to the Purchaser (not the Debtors' estates) under the terms of the APA.  This cash was acquired by the Purchaser pursuant to the APA when it purchased the Debtors' assets under the Sale and is therefore not estate property.  In other words, depending on the outcome of the appeals, the money funded by the Purchaser to the Purchaser Escrow Accounts will either be used to satisfy the professional and wind down expenses as originally called for under the APA and Term Sheet Order, or it will revert back to the Purchaser under the APA.  The Motion should

3

be denied on additional grounds because the IRS has not satisfied any of the four legal requirements that must be met to obtain a stay pending appeal, as explained below.

6. *First*, the IRS has not made any showing that it is likely to succeed on the merits of an appeal of the Sale Order or the Term Sheet Order.  The IRS largely regurgitates the same already-rejected arguments that it made in its objections to the Sale and to the settlement of the disputed issues between the Committee and the Purchaser under the Term Sheet Order.  It is axiomatic that a chapter 11 debtor may sell all or substantially all of its assets pursuant to section 363(b) of the Bankruptcy Code prior to confirmation of a chapter 11 plan, when a debtor articulates a sound business reason for doing so.  This basic precedent is neither novel nor extraordinary.  Moreover, courts in this District regularly permit distributions of non-estate third-property as settlement consideration without regard to the absolute priority rule and other requirements of chapter 11 plans.  There is no binding precedent either in the Third Circuit or the District of Delaware supporting the contrary position urged by the IRS.  In fact, the opposite is true inasmuch as distributions of non-estate third-party property have been expressly allowed by courts in this District, including by the Delaware Bankruptcy Court.  Indeed, the Bankruptcy Court in its ruling to deny the IRS's motion for stay specifically noted that "it begins and ends with the Court's determination that these funds are not property of the estate and there's been no proof to the contrary . . . ."  Hr'g Tr. 6/11/13 at 33.

7. *Second*, the IRS has not established that it will be irreparably harmed absent a stay.  The IRS claims it will suffer harm as its alleged administrative claim may go unpaid if the Sale is consummated.  In fact, the IRS will suffer no harm at all without the stay.

4

First, the IRS's alleged administrative claim only arises as a result of the Sale, and if the Sale

Order were vacated, the IRS would not have any administrative claim arising from the Sale.

Second, even if the IRS had an administrative claim, that claim would never be paid under any

scenario, regardless of what happens to the Sale Order.  The IRS has apparently conceded that it

is only "partially" appealing parts of the Sale Order with respect to the distributions

contemplated under the Purchaser Escrow Accounts, but is not appealing the part of the Sale

Order that authorizes the transfers of the Debtors' health care facilities.[1]  The APA provides that

any unused funds in the Purchaser Escrow Accounts will be returned to the Purchaser.  *See* APA

at § 1.1.  Thus, even if the IRS were to prevail on its meritless appeals, the funds in the Purchaser

Escrow Accounts would not go to the Debtors' estates to pay administrative claims (because they

are not estate property; those funds were sold to and belong to the Purchaser).  **Put simply, there**

**is no scenario in which the United States will recover on its administrative claim against the**

**Debtors and, therefore, the United States would not suffer any harm with or without the**

**imposition of the stay.**  The Motion should be denied for this reason alone because there would

be no harm to the IRS regardless of whether the Motion is granted.

        8.     *Third*, the issuance of a stay has the potential to substantially injure the

Debtors and their creditors.  The IRS pays short shrift to the substantial harm that would befall

the numerous other creditors of these estates, if a stay pending appeal were to be granted in this

---

[1]  The IRS did not seek or obtain a stay of the Sale, which closed on May 31, 2013.  The Committee disputes the IRS's assertion that it can effectively rewrite certain parts of the APA through its appeal while leaving other aspects of the APA intact in order for the IRS to pursue its own agenda.  *See* Motion, pg. 2.  In this Motion, the IRS again concedes that it does not seek to "delay transfer of management of debtors' health facilities or otherwise endanger the well-being of patients."  Motion, pg. 2.  The Committee reserves any and all rights on this issue, including to argue that the IRS's appeals should be dismissed on mootness grounds.

5

case.  Specifically, if a stay of the Sale Order is granted with respect to the payments

contemplated under the Purchaser Escrow Accounts, payments to creditors called for by the APA

and Term Sheet Order would be indefinitely delayed and, if the Sale is overturned on appeal, no

one benefits because the IRS will be in the exact same position.

9.      *Fourth*, the issuance of a stay is not in the public interest.  No public

interest is served by creating a scenario where the IRS gets a stay to vindicate a policy that

merely serves its own particular interests and that will not provide it with any additional

recoveries under any scenario even if it were to prevail.  In such a scenario, assuming a stay is

granted, unsecured creditors will not get paid and the Debtors may be forced to convert their

chapter 11 cases to cases under chapter 7.  At best, this would merely serve to permit the IRS to

appeal an academic point relating to its view of sale orders under section 363 of the Bankruptcy

Code.  In contrast, the public interest is best served by implementing the Sale Order and Term

Sheet Order so that the Debtors can conclude an orderly administration of their estates, and

unsecured creditors can receive a distribution.

10.     In sum, and as set forth further below, there is simply no basis here to

grant a stay pending appeal of the Sale Order and Term Sheet Order.

<u>**Argument**</u>

A.      **The United States Has Not Met Any of the Standards**
        <u>**Required for Obtaining a Stay Pending Appeal**</u>

11.     The test for the appropriateness of a stay pending appeal is the same as

that for a preliminary injunction.  *VFB L.L.C. v. The Money's Trust* (*In re VF Brands, Inc.*), 282

6

B.R. 134, 137 (Bankr. D. Del. 2002); *In re Delaware & Hudson Ry. Co.*, 90 B.R. 90, 91 (Bankr.

D. Del. 1988). In determining whether to stay an order pending appeal, the Court must examine

the following factors:

> (1) whether the stay applicant has made a strong showing that he is likely
> to succeed on the merits; (2) whether the applicant will be irreparably
> injured absent a stay; (3) whether issuance of the stay will substantially
> injure the other parties interested in the proceeding; and (4) where the
> public interest lies.

*Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 658 (3d Cir. 1991); s*ee also*

*Morgan v. Polaroid Corp*, (*In re Polaroid Corp.*) No. 02-1353, No. 01-10864, 2004 WL 253477,

at *1 (D. Del. Feb. 9, 2004).

12.     "If a party fails to establish *one* of the four prongs, a court may deny the

requested stay." *Id.* (citing *In re ANC Rental Corp.*, No. 01-11220, 2002 WL 1058196, at *2 (D.

Del. May 22, 2002)) (emphasis added); *In re Blackwell*, 162 B.R. 117, 120 (E.D. Pa. 1993).

Moreover, the grant of injunctive relief is an "*extraordinary remedy, which should be granted*

*only in limited circumstances*." *Coast Cities Truck Sales, Inc. v. Navistar Internat'l Transp. Co*.

(*In re Coast Cities Truck Sales, Inc.*), 147 B.R. 674, 676 (D.N.J. 1992) (citing *Frank's GMC*

*Truck Ctr., Inc. v. Gen. Motors Corp.,* 847 F.2d 100, 102 (3d Cir. 1988)) (emphasis added).

13.     In reviewing the Bankruptcy Court's denial of a stay pending appeal,

courts apply an abuse of discretion standard. *See Maritime Elec. Co. v. United Jersey Bank*, 959

F.2d 1194, 1203 (3d Cir. 1991); *Fox Sports Net West 2, LLC v. Los Angeles Dodgers LLC (In re*

*Los Angeles Dodgers LLC)*, 465 B.R. 18, 28 (D. Del. 2011); *Family Kingdom, Inc. v. EMIF N.J.*

*Ltd. P'ship*, 225 B.R. 65, 69 (D.N.J. 1998). An abuse of discretion exists where judicial action

DOCS_DE:188473.5 50756/002

"rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." *In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 118 (3d Cir. 2004); *see also In re FRG*, 115 B.R. 72, 73 (E.D.Pa. 1990) (abuse of discretion exists whenever judicial action is "arbitrary, fanciful, or unreasonable, or when improper standards, criteria, or procedures are used").

14.     As detailed below, the IRS is unable to establish *even one* of the four prongs required to justify the imposition of a stay.

**B.     The IRS Has Not Made a Strong Showing That it Is
Likely to Succeed on the Merits of its Appeal**

15.     The IRS has not made any showing – much less a strong showing – that it is likely to succeed on the merits of its appeal. "Likelihood of success on the merits means that a movant has a 'substantial case,' or a strong case on appeal." *In re Polaroid Corp.*, 2004 WL 253477, at * 1; *see also In re Broadstripe, LLC*, No. 09-10006 (CSS), 2009 WL 774401, at *3 (D. Del. March 26, 2009) (concluding that "a stay pending appeal is appropriate, as [the movant] has identified 'substantial issue[s] to raise on appeal'") (internal citations omitted); *In re Country Squire Assocs. of Carle Place, L.P. v. Rochester Comm. Savs. Bank*, 203 B.R. 182, 184 (B.A.P. 2d Cir. 1996) (noting that this prong "is intended to eliminate frivolous appeals").

16.     Here, all the IRS has done is to repeat the same arguments that it made in the Bankruptcy Court – arguments that the Bankruptcy Court considered and overruled at the April 2, 2013 sale hearing and the May 28, 2013 hearing at which the Bankruptcy Court approved the settlement between the Committee and the Purchaser set forth in the Term Sheet

8

Order.  In particular, in the supporting brief as part of its Motion, the IRS again misconstrues the

structure of the Sale and the Term Sheet Order assuming, without any factual support, that the

payments in the Purchaser Escrow Accounts constitute estate property.  This is not the case; the

Purchaser Escrow Accounts are no more estate property than the other assets that the Purchaser

acquired pursuant to the Sale and any unused funds in those accounts would revert back to the

Purchaser (not the Debtors' estates).  The Bankruptcy Court specifically found that there was no

evidence on which to find that the payments to be made by the Purchaser under the Term Sheet

Order were somehow property of the Debtors' estate.  *See* Hr'g Tr. 6/11/13 at 34 ("And the

Court finds that there is really no record here on which to – for me to base a finding that the

funds being held, in effect, in trust for other creditors, for other parties and specifically pursuant

to a contract, that those are not property of the estate and I so find and, therefore, I will deny the

stay.").

        17.     The IRS also argues that the Sale calls for payments outside of a chapter

11 plan, in violation of the plan requirements in section 1123 regarding similar treatment of

claims within the same class.  This Court should reject that argument for the same reasons as the

other plan-related arguments the IRS made to the Bankruptcy Court.  Put simply, chapter 11

debtors are free to sell their assets through a sale under section 363 of the Bankruptcy Code

based upon the sound business judgment test; debtors are not required to demonstrate that the

proposed sale meets the chapter 11 plan requirements.  *See In re General Motors Corp.*, 407

B.R. 463, 491 (Bankr. S.D.N.Y. 2009) ("[I]t is now well established that a chapter 11 debtor may

sell all or substantially all its assets pursuant to section 363(b) prior to confirmation of a chapter

9

11 plan, when the court finds a good business reason for doing so."); *In re Chrysler LLC*, 405

B.R. 84, 96 (Bankr. S.D.N.Y. 2009) ("a debtor may sell substantially all of its assets as a going

concern and later submit a plan of liquidation providing for the distribution of the proceeds of the

sale.").

        18.     The Bankruptcy Court's ruling was entirely consistent with applicable

precedent when it overruled the IRS's objection to the Sale.  The IRS in the Motion repeatedly

attempts to analogize its arguments to cases addressing the absolute priority rule for chapter 11

plans that is completely distinguishable from the facts here.  The absolute priority rule has no

application outside the chapter 11 plan context.  It does not apply to a sale of assets under section

363 of the Bankruptcy Code.  The Debtors were not required to satisfy the requirements to

confirm a chapter 11 plan, including sections 1123 and 1129 of the Bankruptcy Code, in order to

implement the sale of substantially all of their assets under section 363(b) of the Bankruptcy

Code as they did pursuant to the Sale.  The applicable standard governing the sale of a debtor's

assets is whether the sale is supported by the Debtor's sound business judgment, and does not

require the Debtors to satisfy the requirements to confirm a chapter 11 plan.  *In re Trans World

Airlines, Inc.,* 2001 WL 1820326, at *11 (Bank. D. Del. 2001) ("The purpose of a § 363 sale is to

maximize benefits to the debtor's entire estate.  Where a sale results in disparate treatment of

similarly situated creditors the sale may appear to be at the expense of individual creditor

constituencies. However, if the sale is in the best interests of the estate it follows that the entire

estate suffers in the absence of the sale."); *Dai-Ichi Kangyo Bank, Ltd. V. Montgomery Ward

Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 154-55 (D. Del. 1999)

(holding that debtors are not required to show reasonable prospect of successfully reorganizing when attempting to use property pursuant to section 363(b)); *see also In re General Motors Corp.*, 407 B.R. at 487 ("Most significantly, neither section 1123(b)(4) nor any other section of the Code trumps or limits section 363").

19.    By contrast, the APA and the related settlement embodied in the Term Sheet call for distributions of non-estate third-party property, and such distributions have been expressly allowed by courts in this District.  *See In re TSIC, Inc.*, 393 B.R. 71, 77 (Bankr. D. Del. 2008) (approving Rule 9019 settlement in connection with sale of assets outside of chapter 11 plan and finding that proposed purchaser's carveout of funds for general unsecured creditors was appropriate because the funds "are not proceeds from a secured creditor's lien, do not belong to the estate, and will not become part of the estate even if the Court does not approve the Settlement."); *In re World Health Alternatives, Inc.*, 344 B.R. 291, 299 (Bankr. D. Del. 2006) (holding that secured lender's carve out to general unsecured creditors and professionals as part of settlement outside of chapter 11 plan did not violate the absolute priority rule because "the property belongs to the secured creditor not the estate.").

20.    The IRS relies heavily on *In re Armstrong World Indus., Inc.*, 432 F.3d 507 (3d Cir. 2005), which held that a distribution of **estate property** to equity **pursuant to a chapter 11 plan** over the objection of a senior class of general unsecured creditors violates the absolute priority rule. *Id*. at 518.   As noted above, the Sale was effectuated pursuant to section 363 of the Bankruptcy Code, not through a plan, so the IRS's repeated citation to and reliance on sections 1123, 1124 and 1129 of the Bankruptcy Code and the absolute priority rule are simply

11

not relevant here.  In addition, *Armstrong* involved distributions of estate property in violation of

the absolute priority rule, which is not applicable to this case because the funds at issue are non-

estate property.

          21.      Both *TSIC* and *World Health Alternatives*, which approved settlements

substantially similar to the settlement set forth in the Term Sheet, expressly distinguished

*Armstrong* on the grounds that the absolute priority rule does not prohibit, and is not implicated

by, settlements where a secured creditor distributes a part of its own property.  *See TSIC*, 393

B.R. at 75-77; *World Health Alternatives*, 344 B.R. at 297-99.  This reasoning is supported by *In

re SPM Mfg. Corp.*, 984 F.2d 1305 (1st Cir. 1983), where the First Circuit held that a secured

creditor's agreement to distribute *its own property*, in the form of proceeds of the sale of a

debtor's property to be distributed to such secured creditor pursuant to court order, to such

debtor's general unsecured creditors did not implicate the absolute priority rule.  *See id.* at 1313-

15.  According to the *SPM* court, such proceeds ceased to be estate property once ordered to be

distributed to the secured creditor, and could thereafter be disposed of as the secured creditor

wished.  *See id.* at 1313 ("[O]nce the court lifted the automatic stay and ordered those proceeds

distributed to [the secured creditor] in proper satisfaction of its lien, that money became the

property of [the secured creditor], not of the estate.").  Similarly, the Purchaser may distribute its

property as it sees fit and has chosen to do so by funding the Purchaser Escrow Accounts to fund

the wind down expenses of these cases.  If the Purchaser does not elect to make payments from

its own property to satisfy administrative claims against the Debtors, it is under no obligation to

do so.  To the extent that any property that was once property of the Debtors' estates is used to

12

satisfy the Purchaser's obligations under the proposed settlement, such property ceased to be

estate property pursuant to the terms of the Sale.

22.     Finally, the IRS attempts to characterize the transaction and payments

called for under the Term Sheet in the Purchaser Escrow Accounts as some sort of "continuous

flow of funds" originating with the Debtors' sale of assets that somehow makes any

consideration under the Sale – regardless of source, timing, or structure – property of the estate.

Indeed, without any factual support, the IRS argues that the Purchasers "acted as a conduit to

send funds originating with debtor to the selected administrative claimants and the unsecured

creditors."  Motion at 16-17. [2] As noted, above, that is simply wrong because it completely

ignores the fact that the assets purchased belonged to the Purchaser, which is the case in every

sale under section 363(b) of the Bankruptcy Code where a purchaser acquires a debtor's assets.

That the Purchaser elected to use its purchased assets to compromise its disputes with the

Committee does not transmute the Purchaser Escrow Funds into estate property.  Indeed, the

APA provides that any remaining funds would revert to the Purchaser, not the Debtors.  In other

words, the Debtors' estates would *never* receive the funds in the Purchaser Escrow Accounts,

regardless of the outcome of this appeal, because those funds were acquired by the Purchaser

when it acquired the Debtors' assets by credit bidding its senior secured debt.  In addition, the

IRS failed to provide any evidence to the Bankruptcy Court to support its "continuous flow of

---

[2]  The IRS attempts to obfuscate the true nature of this transaction by focusing on the Term Sheet Motion's description of allocating proceeds "derived from the sale" (Motion at 17) to support its erroneous contentions. The Term Sheet Motion does not indicate that the settlement will be funded with the Debtors' property and, in any event, cannot change the underlying facts, which clearly show that the Purchaser established the Purchaser Escrow Accounts to make the other payments set forth in the Term Sheet with its own non-estate money. Accordingly, the settlement funds are not property of the Debtors' estates.

13

funds" theory, and the Bankruptcy Court expressly found that there was no evidence or record on which to support the IRS's argument. *See* Hr'g Tr. 6/11/13 at 34. Instead, the IRS chose to rely on assumptions and its own interpretation of how the transaction appeared to be structured. Accordingly, the Bankruptcy Court's finding and its decision to deny the requested stay based on its ruling to approve the Term Sheet was not an abuse of discretion.

23. The IRS has not made a strong showing that it is likely to prevail on the merits of its appeal. It has not demonstrated that the Bankruptcy Court's decision to approve the Sale was contrary to any binding precedent, against the clear weight of authority on any issue, or involved an issue on which there is a wide divergence of opinion. The Bankruptcy Court's decision was well within the bounds of applicable authority and the evidence in support of the Sale demonstrated that the Debtors easily met the sound business judgment test for approval of the Sale. Accordingly, the United States has not, and cannot, demonstrate a likelihood that it will prevail on the merits.

C. **The IRS Has Not Established That it Will Be Irreparably Injured Absent a Stay**

24. The IRS will not suffer irreparable harm absent the stay. As noted above, prior to the Sale, the Purchaser had a senior secured lien on substantially all of the Debtors' assets. Following the Purchaser's credit bid and acquisition of the Debtors' assets in exchange for the cancellation of its indebtedness, the Purchaser then funded the Purchaser Escrow Accounts from the proceeds of the assets it acquired under the Sale in order to compromise its disputes with the Committee. Under any outcome of this appeal, the funds in the Purchaser

14

Escrow Accounts can never constitute property of the Debtors' estates.  The IRS will still be in

the same position with respect to its alleged administrative tax claim because it would not get

paid under any scenario, regardless of whether the Sale Order was entered.  If the cases were

dismissed as requested by the IRS in its objection to the Sale Motion, and if the Debtors' secured

lenders exercise their non-bankruptcy state law remedies and foreclose on the Debtors' assets, as

they presumably would do, the IRS would be in the exact same position as if the Sale was

approved because it would not be entitled to its alleged administrative claim that arises only

because of the Sale itself.  Even if the Sale Order is overturned, the IRS would not receive any

monies.

   25.  The IRS also suggests that a stay should be granted because the other

parties, including the Committee, will argue that the IRS's appeal is equitably moot if the Sale

closes and distributions are made.  But "an appeal being rendered moot does not itself constitute

irreparable harm." *In re TWA*, No. 01–56, 2001 Bankr. LEXIS 723 at *28–29 (Bankr. D. Del.

Mar. 27, 2001) (citation omitted); *In re 203 North LaSalle St. P'ship*, 190 B.R. 595, 597-98

(N.D. Ill. 1995) ("It is well settled that an appeal being rendered moot does not itself constitute

irreparable harm."); *see also Virginia Dep't of Med. Assistance Servs. v. Shenandoah Realty*

*Partners (In re Shenandoah Realty Partners)*, 248 B.R. 505, 510 (W.D. Va. 2000) (same); *In re*

*Charter Co.*, 72 B.R. 70, 72 (Bankr. M.D. Fla. 1987) (same); *In re Bd. of Dirs. of Multicanal*

*S.A.*, No. 04–10280, 2005 Bankr. LEXIS 1865 at *6 (Bankr. S.D.N.Y. Jan. 6, 2005) (same); *In re*

*Kmart Corp.*, No. 02–C–9257, 2002 WL 31898195, at *1 (N.D. Ill. Dec. 30, 2002) (same).

26.     The IRS has not demonstrated that it will be irreparably harmed absent a

stay.

**D.     The Issuance of a Stay Has the Potential to
        Substantially Injure Creditors**

27.     Unlike the IRS, the Debtors and their other creditor constituencies do not

have the luxury of awaiting the outcome of a lengthy appellate process.  The IRS argues that no

one will be harmed by issuing a stay, and other creditors will only be inconvenienced by a delay.

Unsecured creditors and other parties who expect to receive payments under the terms of the

APA and Term Sheet Order should not be required to wait months or even years for a recovery.

The money being paid is not estate property, as the Bankruptcy Court held at the May 28, 2013

hearing on the Committee's motion to approve the Term Sheet and again at the June 11, 2013

hearing on the IRS's motion for a stay pending appeal.  Issuing a stay pending appeal would

cause substantial injury to the parties receiving the payments – they would be prevented from

recovery, the source of which is not estate property and for which there is no legal basis to

dispute, and may lead to insolvency or other hardships for those parties.

**E.     Issuance of a Stay Is Not in the Public Interest**

28.     The IRS claims that issuing a stay will benefit the public interest by

allowing the IRS to "uphold the fundamental principles of the Bankruptcy Code . . . ."  Motion at

19.  No public interest is served simply because the IRS wants to vindicate a policy that serves

its own interests and because it is concerned about bad precedent for litigation in future cases.

Meanwhile, unsecured creditors would be prevented from receiving payment so that the IRS can

16

appeal an academic point.  The public interest is best served by allowing the Sale Order to be fully implemented and Term Sheet approved so that distributions can be made and to enable the Debtors to wind these cases down.  *See In re Trans World Airlines, Inc.*, No. 01–0056, 2001 WL 1820019, *5 (Bankr. D. Del. Mar. 16, 2001) (in denying a stay pending appeal, court held that the there is a "substantial public interest in preserving the value of TWA as a going concern and facilitating the [section 363] sale [of substantially all of the debtors' assets] to American.").

29.     Indeed, courts have recognized that there is a strong public policy interest in seeing that bankruptcy cases are administered swiftly and efficiently.  *See Glass v. Isotec Int'l, Inc. (In re Southwest Recreational Indus., Inc.)*, 2008 WL 7874256, at *3 (Bankr. N.D. Ga. July 14, 2008) (in denying motion for stay pending appeal, court noted that "there is a general public policy favoring the finality of judgments and a particular bankruptcy policy in seeing that a bankruptcy case is administered efficiently"); *In re Savage & Assocs., P.C.*, 2005 WL 488643, at *2 (S.D.N.Y. Feb. 28, 2005) ("the public interest favors the expedient administration of the bankruptcy proceedings . . . "); *see also Hazelbaker v. Hope Gas, Inc. (In re Rare Earth Minerals)*, 445 F.3d 359, 363 (4th Cir. 2006) (noting that a movant's interests in seeking a stay are not the only interest at issue because, a strong "public policy interest in . . . the swift and efficient administration of the bankrupt's estate, may in certain cases out-weigh the claimant's desire for a second bite at the apple on appeal.") (quoting *Scott v. Nat'l Century Fin. Enters. (In re Balt. Emergency Servs. II Corp.)*, 432 F.3d 557, 560 (4th Cir. 2005)); *Jarboe v. Yukon Nat'l Bank, (In re Porter)*, 54 B.R. 81, 82 (Bankr. N.D. Okla. 1985) ("The public interest, though difficult to measure in a case involving primarily private rights, is generally served by moving

17

forward."); *In re Great Barrington Fair and Amusement, Inc.*, 53 B.R. 237, 241 (Bankr. D. Mass. 1985) ("[I]f stay is granted, the other interested parties, as well as the public will suffer harm. The chief harm which will be caused by a stay is the delay which will be suffered by the other creditors.").

30.     Issuing a stay does not serve the public interest.  For the reasons noted above, the IRS would be in the same position regardless of whether the Sale Order was entered. But if a stay is granted, the IRS gets a chance to pursue its own interests (which are academic with respect to this case) while other creditors and interested parties suffer a delay of months or years and risk non-payment while the issues appealed by the IRS are briefed and argued.  The public in this case is also well-served by the continuation of the Debtors' business pursuant to the Sale.  Jobs have been saved, patients will continue to receive care and communities will continue to enjoy the services of the hospitals sold to the Purchaser.  Under these circumstances, the public interest is best served by denying the Motion of the IRS, allowing the APA and Sale Order to be fully implemented, and allowing the estates to be administered swiftly and efficiently.

18

WHEREFORE, the Committee respectfully requests that the Court deny the IRS's request for the extraordinary relief of a stay pending the appeal of the Sale Order and approval of the Term Sheet for the reasons set forth above.

Dated:  July 15, 2013                          PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Bradford J. Sandler*
Laura Davis Jones (Bar No. 2436)
Bradford J. Sandler (Bar No. 4142)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
Wilmington, DE  19801
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400
Email: ljones@pszjlaw.com
        bsandler@pszjlaw.com
        joneill@pszjlaw.com

Counsel to the Official Committee of Unsecured Creditors

DOCS_DE:188473.5 50756/002